**STATE of Utah, Plaintiff and Appellant,**

v.

**Richard Arthur CHAMBERS, Defendant and Respondent.**

**No. 13845.**

Supreme Court of Utah.

March 24, 1975.

Vernon B. Romney, Atty. Gen., M. Reid Russell, Earl F. Dorius, Asst. Attys. Gen., Salt Lake City, for plaintiff and appellant.

Walter G. Mann, of Mann & Hadfield, Brigham City, for defendant and respondent.

MAUGHAN, Justice:

This matter comes to us as an appeal from an order of the trial court expunging defendant's criminal record, and denying the State's motion for a stay of that order. The trial court proceeded under the provisions of Section 77–35–17, U.C.A.1953, as amended.

Defendant entered a plea of guilty to two charges of felony, viz., making a profit of public money and of misusing public funds. Upon motion of the prosecuting attorney eight other charges were dismissed. The court then sentenced defendant to two indeterminate terms in the state penitentiary, the sentences to run concurrently. The execution of the sentences was suspended, and defendant was placed on probation, one of the terms of which was that he

serve one year in the county jail. After serving four months, the sentencing judge modified the terms of the probation by terminating defendant's sentence, and on the twenty-first day of August 1972 placed defendant on probation, under the supervision of the Department of Adult Probation and Parole. Thereafter, on October 9, 1973, pursuant to an affidavit of an official of the Adult Probation and Parole Department stating that defendant had successfully completed his probation, defendant was discharged therefrom.

On July 8, 1974, the trial court expunged defendant's record. The prosecutor opposed the expungement, and later moved the court to stay its order for five years so as to comply with the provisions of Section 77–35–17.5, U.C.A.1953, as amended L.1973, Chapter 198, Section 1; this motion was denied.

The State raises three points on appeal; the first two may be combined, they are: (1) that the provisions of 77–35–17.5 were applicable and should have been applied; (2) that the expungement order was not compatible with the public interest. Defendant countered by claiming that the provisions of 77–35–17 were applicable, and by challenging the State's right to appeal.

These two statutes are mutually exclusive. Section 77–35–17.5 does not purport to amend or repeal 77–35–17. It is apparent that each deals with a different situation.

Section 77–35–17 (L.1923, Chapter 74, as amended by L.1943, Chapter 24) could be called the Court's Statute, for it comes into operation on the court's own motion or that of the prosecutor. The court could move on its own motion to expunge, and did so pursuant to 77–35–17, as set forth in its order. Section 77–35–17.5 could be called the Any Person Statute, for it comes into operation on the motion of *any person* who can find definition within its terms.

■ The record shows a confusion of both statutes in the initiation of this matter; this is carried into the court's order, and is not properly a part of the authority granted under 77–35–17. Proceeding under this statute the court cannot seal the record, restrict its inspection, nor bring into operation circumstances which would allow a response to inquiries relating to a conviction of crime, as though such conviction had never occurred. The court can terminate the sentence, set aside a defendant's plea of guilty, the conviction, dismiss the action, and discharge the defendant. The court can also direct that copies of its order be dispatched to appropriate agencies —this the court can do in aid of its order, that it may have its intended effect.

The word "expunge" properly describes a physical act, not a legal one.[1] However, in relation to 77–35–17, it has become fastened in our law by decision and practice as descriptive of what the court can do under that statute. In this sense it is expressive of cancel, revoke, set aside.

■ Some argument, in the briefs, is made concerning whether the subject action of the court comes to a defendant as a matter of right or of grace. Probation and expungement of one's record are neither matters of right nor of grace, but can only be granted when they appear to be compatible with the public interest.[2] The Zolantakis case referred only to suspension of sentence and probation, as then provided under Chapter 74, L.1923. In 1943, the legislature added the last sentence to what is now our 77–35–17, providing for an expungement of one's record "if it be compatible with the public interest." This court, subsequently addressed itself to that ultimate sentence, and said it was "for the purpose of permitting the court under unusual circumstances and for good cause to expunge the record of crime."[3]

1. Andrews v. Police Court of City of Stockton, Cal.App., 123 P.2d 128, 129.

2. State v. Zolantakis, 70 Utah 296, 259 P. 1044 (1927).

3. State v. Schreiber, 121 Utah 653, 245 P.2d 222 (1952).

■ In the exercise of these broad discretionary powers, which are clearly allowed to encourage reformation of wrongdoers,[4] the court must consider a great many intangibles, such as: the character and personality traits of the defendant, his attitude, his prior record, his performance under probation, and whether he has acquitted himself well in accepting the duties his society requires. If this discretion is reasonably used, and is not shown to have been abused, arbitrary, or capricious, the judgment of the trial court should not be disturbed.[5] There is no showing here that the trial court did not properly consider the necessary conditions precedent to expungement prior to its order.

■ The State claims, in its third point, that the action of the trial court was not compatible with the public interest, and in support thereof says that such interest is not served in cleansing, so rapidly, the record of the criminal acts here involved. We are certainly not unmindful of the seriousness of crimes, which have as their gravamen the failure to honor a public trust. However, we cannot support the State's claim, in this instance, as a general proposition, because of the discretionary function of the trial court, and because the trial court's performance has not been shown to have exceeded its discretionary boundaries. The trial court proceeded pursuant to statute, and from the record presented, we conclude, could have reasonably found the expungement to be in the public interest. No evidence has been adduced to show the interest of the State to have been ill served.

The trial court is affirmed, except as to those parts of its order not in consonance with this opinion, and as to them, the matter is remanded with instructions to render an order reflecting the directions herein. No costs awarded.

ELLETT and TUCKETT, JJ., concur.

HENRIOD, Chief Justice (dissenting):

I concur in the dissent with Mr. Justice Crockett except as to that part of his opinion suggesting that to seal or expunge criminal records is an unpardonable sin, and interment of the truth and a distortion of justice. I agree generally that expungement and sealing of public records should fly on the wings of a rare bird,—but I think it wholesome and responsive to the public weal, if, in a given case, it would award a young man, for example, the opportunity to enlist in the military, possibly to die for his country, and doing so, might suffer physical, as well as bookkeeping, expungement, but who somehow might exult in some kind of spiritual compensation. This in the light of perhaps a Christian interment of a penitent criminal and a forgivable, non-capital, record that in perpetuity, admittedly would prevent such a pardon (which traditionally is American and human), rather than to pursue a course that may burn away his everything on a pyre of papyrus in a musty County Court House.

We extend such authority to the Probate Court, where the history of an adopted child is sealed in silence,[1] where the heartbreak of revealing it in some instances would be the difference between unmerciful death and merciful life. The pardoning power is an adjunct of what this author is trying to say. Many a convict is entitled to some kind of chance, and if a reasonable, properly administered bit of nondisclosure would help to get him a job without forsaking entirely his heritage and country, and without constant police surveillance, rather than promoting recidivism,—I see no sense other than to apply the Biblical admonition to go hence and sin no more,—and if he follows it, let's forget

4. Williams v. Harris, 106 Utah 387, 149 P. 2d 640 (1944).

5. Williams v. Harris, Ibid.; State v. Sibert, 6 Utah 2d 198, 310 P.2d 388 (1957).

1. Title 78–30–15, Utah Code Annotated, 1953.

it. I think the statute points up such a philosophy,—but even yet could be more viable.

CROCKETT, Justice (dissenting):

I dissent, based on two propositions. First, the so-called "Order of Expungement" is, in my opinion, squarely and incontestably contrary to Section 77–35–17, U.C.A.1953, upon which it expressly states it is based.

Second, and more important, the order ignores and violates the explicit mandate of Section 77–35–17.5, U.C.A.1953, which contains the *only* authorization for anything resembling the "expungement" which is ordered; and which statute provides that there must be five years of proper conduct before any such order may be entered.

The material portion of the court's memorandum decision, dated August 6, 1974, states:

The court previously issued its order of expungement. The plaintiff State of Utah has now filed a motion for an order to stay execution of the expungement for a period of five years as provided in Section 77–35–17.5.

As previously stated in the court's order, the basis for expungement was not on the basis of Section 77–35–17.5 but [A] *was on the basis of the previous section not repealed, Section 77–35–17,* [B] *for the reason that the conviction in this case occurred prior to the enactment* of *77–35–17.5,* and the court feels that, therefore, Section 17–35–17 is the applicable statute and the five years would then not be in effect.

As to how the action was initiated into the court, upon whose motion, *the court* took notice of such motion *and* [C] *on its own behalf* made the order of expungement. The court feels, therefore, that this is not an issue and denies the motion for a stay of expungement for the five year period under *77–35–17.5.*

It is not without some discomfiture that I feel compelled to point out that the emphasized portions of the lower court's memorandum decision as set forth above are patently in error. But in those emphasized parts, at which I have inserted [A], [B], and [C] for identification in the discussion below, there are misstatements of both law and fact.

The error at [A] is the statement that the expungement order is based on Section 77–35–17, whereas, that statute has no word, nor even a hint, about *expungement* or sealing records. It necessarily follows that the order recites any possible foundation it might have out from under itself.

The error at [B] is with the recital that the conviction occurred prior to the enactment of Section 77–35–17.5 [1] to make it appear that the five-year waiting period does not apply. That section provides for a post-conviction procedure. It obviously can be invoked at any time after the conviction so long as its requirements are met. The trial court's statement that the statute does not apply because it was enacted *after* the conviction cannot be other than an attempt to avoid the mandate of that section: that there *must* be a five-year period of right conduct before any such order can be entered.

The error at [C] is that the court's statement that it "took notice of such motion and *on its own behalf* made the order of expungement" seems to be an attempt to change the complexion of the proceeding in a manner squarely inconsistent with the court's recital in its order of July 8, 1974, issued just one month previously:

That the said *Richard Arthur Chambers has now petitioned the court* to allow him to withdraw his plea of guilty to said charges and dismiss the information in all of said complaints being Criminal Complaints numbered 1370 to 1379, pursuant to the provisions of Section 77–35–17 Utah Code Annotated, 1953, *and to expunge the record.*

---

1. Took effect May 8, 1973; see Ch. 198, S.L.U. 1973.

One wonders why, in addition to the other errors pointed out above, the trial court felt it necessary to attempt to make it appear that it was the court, and not Mr. Chambers, who initiated this so-called "expungement" proceeding.

I suppose nearly everyone has experienced the ego comfort that comes from helping someone in trouble; and the pang that comes from the necessity of adversely affecting his fellowman. I also acknowledge that for anyone who has erred, it is commendable and desirable to extend sympathy, encouragement and rehabilitation in any wholesome and proper way.

Notwithstanding what I have just said, I think there are some fundamental and important considerations which impel the necessity of pointing out the unlawfulness of the procedure taken in this case. I observe that this is prompted by no concern about Mayor Chambers as an individual (of whom I know nothing except as revealed in this record). It may seem to some that such a procedure is quite all right for some eminent person who has erred. But our purpose should transcend concern about any individual. It should be about the pattern such a proceeding (and its approval by this court), sets for the multitude of ordinary citizens, and the effect it will have upon them; and upon all criminal procedures and criminal records generally.

The administration of justice entails the duty of being faithful and truthful in recording and preserving what is done in fulfilling that responsibility. The records and history are made up, not only of heroics and accomplishments, but of failures and follies, and out of the total experience come the lessons, hopefully, for minimizing wrongful and encouraging rightful conduct. It is my opinion that that desired objective cannot properly be served by official distortions to circumvent the law. There is no authority cited, and none can be found, to support the proposition that the trial court has any inherent power to obliterate its records. If it has any power to change the official records of conviction, it certainly cannot exist except as expressly authorized by statute.[2]

It was undoubtedly for the foregoing reasons that the legislature appears to have been quite circumspect in the allowance of this sealing or "expungement" of the record by including the precaution that it should be done *only* after the expiration of a period of five years of following the path of rectitude by one convicted of crime. This condition has not been complied with because the order appealed from is patently contrary to law as explained above, it should be set aside. (All emphasis added.)

---

2. Insofar as this writer is concerned, neither asking nor expecting anyone else to agree, I seriously question the wisdom of the application of such a statute except in rare and exigent circumstances; and particularly that portion thereof which purports to authorize a convicted and "expunged" person to lie, in denying that he has ever been convicted of crime. The mischief that may ramify from such falsifying should be obvious. Nevertheless, I bow to the legislative will as expressed in Section 77–35–17.5 that under proper circumstances *after the lapse of five years* the court may act in accordance therewith.