*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 26**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

TAYLORSVILLE CITY,
*Respondent,*

*v.*

JEFFREY MARK MITCHELL,
*Petitioner.*

No. 20180930
Heard February 12, 2020
Filed May 14, 2020

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake County
The Honorable Heather Brereton
No. 151403219

Attorneys:

Sean D. Reyes, Att'y Gen., Nathan H. Jack, Asst. Solic. Gen., Salt
Lake City, Stephen K. Aina, Taylorsville, for respondent

Alexandra S. McCallum, Salt Lake City, for petitioner

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS, JUSTICE PEARCE,
and JUSTICE PETERSEN joined.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 Jeffrey Mark Mitchell was convicted of three misdemeanors in justice court. He then invoked his statutory right to appeal these convictions by seeking a trial de novo in the district court. On retrial, he was convicted of two of the charges and acquitted of the other. By statute, Mitchell's appellate road was then at an end. *See* UTAH CODE § 78A-7-118(4), (8) (providing for a "hearing de novo in the district court" on justice court convictions but foreclosing further appeal "unless the district court rules on the constitutionality of a statute or

ordinance"). But Mitchell sought to pursue an appeal in the court of appeals anyway. The court of appeals dismissed for lack of jurisdiction. We then granted certiorari to consider Mitchell's constitutional challenges to the statute as applied to this case.

¶2   Mitchell asserts that section 78A-7-118(8) infringes his state constitutional right to an appeal and runs afoul of other provisions of the state and federal constitutions. We reject Mitchell's challenges and uphold the constitutionality of this statute.

I

¶3   In 2015, Jeffrey Mark Mitchell was found guilty of three class B misdemeanors in the Taylorsville City Justice Court. He then exercised his statutory right to appeal his convictions under Utah Code section 78A-7-118(4), which provides that "[a] defendant convicted and sentenced in justice court is entitled to a hearing de novo in the district court."

¶4   In the district court, Mitchell was acquitted of one misdemeanor and reconvicted of the other two. Thereafter, he requested new counsel to file a motion for a new trial. This request was denied. He then filed a pro se motion for a new trial, asserting ineffective assistance of counsel. This motion was also denied. Mitchell was then sentenced to two concurrent fifteen-day jail terms, but the court suspended the sentence and put him on probation for a year.

¶5   By statute, Mitchell had exhausted his right to an appeal following the district court's decision. *See* UTAH CODE § 78A-7-118(8) (stating that "[t]he decision of the district court" on appeal from justice court "is final and may not be appealed unless the district court rules on the constitutionality of a statute or ordinance"). He nonetheless filed an appeal in the court of appeals.

¶6   That court issued a *sua sponte* motion for summary dismissal for lack of jurisdiction under Utah Code section 78A-7-118(8). Mitchell responded, arguing that a dismissal of his case under section 78A-7-118(8) would deprive him of both his state right to appeal and his federal right to due process. The court of appeals disagreed, holding that it lacked jurisdiction "because [Mitchell's] case originated in a justice court and the district court did not rule on the constitutionality of a statute or ordinance."

¶7   Mitchell then sought certiorari review of the court of appeals' decision, asserting that section 78A-7-118(8) is unconstitutional as applied to him. We granted certiorari to consider

"[w]hether the [c]ourt of [a]ppeals erred in dismissing Petitioner's appeal pursuant to" that section.

II

¶8   Mitchell claims that the Utah Constitution guarantees him a right to appeal beyond the non-appealable de novo trial allowed under Utah Code section 78A-7-118(8). Such retrial was the precise form of appeal contemplated by the 1896 Utah Constitution for cases initiated in the predecessor to our modern justice court (justice of the peace court). *See* UTAH CONST. art. VIII, § 9 (repealed 1984); *City of Monticello v. Christensen*, 788 P.2d 513, 516 (Utah 1990) (noting that "[t]he right of appeal from a justice of the peace to the district court referred to in article VIII, section 9 was a trial de novo because justice courts have never been courts of record"). But Mitchell nonetheless asserts that the preservation of the non-appealable de novo trial mechanism infringes his state constitutional right to an appeal and also falls short as a matter of uniform operation of laws and federal due process.

¶9 In support of that view, Mitchell relies heavily on amendments made to article VIII of the Utah Constitution in 1984. Those amendments eliminated the specific provision identifying a de novo trial as the mechanism for appeal from a judgment of the justice court. And Mitchell claims that they sustain his view that a de novo trial is no longer an adequate appeal under the constitution.

¶10 We rejected a constitutional challenge to the process contemplated in section 78A-7-118(8) in *Christensen*. There, we held that a non-appealable de novo review in district court is sufficient. *Christensen*, 788 P.2d at 517–19.

¶11 Mitchell acknowledged *Christensen* in his jurisdictional briefing in the court of appeals. But he argued that he was nonetheless denied his state right to appeal and federal right to due process because he did not have "a meaningful appeal in the district court" in light of the alleged ineffective assistance of his counsel during that appeal. The court of appeals rejected Mitchell's arguments and dismissed his case for lack of jurisdiction under Utah Code section 78A-7-118(8).

¶12 Because Mitchell neither challenged *Christensen*'s holding that the de novo appeal process vindicates the right to appeal nor raised a uniform operations argument in the court of appeals, the constitutional claims that Mitchell now raises in this court were largely unpreserved in the court of appeals. And Taylorsville easily could have defended the court of appeals' decision on that basis. Yet

Taylorsville has failed to advance an objection on preservation grounds. Instead it briefed all of the issues on the merits.

¶13 This leaves us in an unusual position. On one hand, Mitchell failed to preserve the bulk of his constitutional claims[1] in his briefing in the court of appeals. But on the other hand, Taylorsville failed to object to the lack of preservation. Both sides, in that sense, have forfeited their stake in whether we should reach the merits. And that leaves us with substantial discretion as to how to proceed—on whether to reach the merits (because Taylorsville briefed them and failed to object to the lack of preservation) or decline to do so (due to Mitchell's lack of preservation). *See State v. Johnson*, 2017 UT 76, ¶ 12, 416 P.3d 443.

¶14 Our discretion here is informed by one additional consideration—fairness to the lower court. *See Patterson v. Patterson*, 2011 UT 68, ¶ 16, 266 P.3d 828. The law of preservation protects more than just the interests of the parties. It also protects the interests of lower courts whose decisions we review. And those interests would be undermined if we reversed a lower court on a ground presented for the first time on appeal or certiorari. *Id.*; *see also State v. Applegate*, 591 P.2d 371, 373 (Or. Ct. App. 1979).

¶15 This concern is not implicated, however, where our ultimate decision is to affirm the lower court. And that is our chosen course here. We reach the merits of the questions presented in light of three sets of considerations: (a) both parties have waived their stake in the matter, (b) we are affirming the lower court across the board, and (c) a decision on the merits will bring clarity and closure to important issues fully briefed by the parties.

¶16 We explain the basis of our decision on the merits below. First we consider Mitchell's assertion that Utah Code section

---

[1] To the extent Mitchell's position depends on an overruling of our decision in *City of Monticello v. Christensen*, 788 P.2d 513 (Utah 1990), the failure to preserve could be excused on futility grounds. The court of appeals lacks the power to overrule *Christensen*. And with that in mind, we might not fault him for not asking it to do so, even though it would have been a "best practice" to do so—to "create a record of the arguments" for consideration on certiorari. *Estate of Faucheaux v. City of Provo*, 2019 UT 41, ¶ 35 n.13, 449 P.3d 112.

78A-7-118(8) infringes his constitutional right to an "appeal" under articles I and VIII of the Utah Constitution—a claim we rejected in *Christensen*. We reject this claim as unsupported by the original meaning of the governing provisions of the Utah Constitution and also as a matter of *stare decisis*. Next we consider Mitchell's assertion that Utah Code section 78-7-118(8) runs afoul of the Uniform Operation of Laws Clause of the Utah Constitution. We reject this claim on the ground that Mitchell has failed to carry his burden of establishing a lack of uniform operation under our case law. Last we consider Mitchell's federal due process argument. We conclude that there is no due process problem here even if we accept the premise of Mitchell's due process analysis.

## A. Right to Appeal

¶17 Mitchell's first claim is his assertion that Utah Code section 78A-7-118(8) infringes his state constitutional right to an appeal. The "right to appeal in all cases" is guaranteed under article I, section 12 of the Utah Constitution. And that right is reinforced in article VIII, section 5, which provides for an "appeal of right" in all matters (except those "filed originally with the Supreme Court") from a "court of original jurisdiction to a court with appellate jurisdiction."

¶18 Mitchell concedes that a non-appealable de novo trial in district court was the "appeal" from a judgment of a justice court contemplated under the founding Utah Constitution. That document expressly provided for "[a]ppeals . . . from the final judgment of justices of the peace . . . to the District Courts" whose "decision[s] . . . on such appeals" were "final[] except in cases involving the validity or constitutionality of a statute." *See* UTAH CONST. art. VIII, § 9 (repealed 1984). Because justice of the peace courts and justice courts "have never been courts of record," the only recourse from a decision of such courts, both historically and through the present day, has been through a de novo trial in the district court.[2] With this

---

[2] *See City of Monticello v. Christensen*, 788 P.2d 513, 516 (Utah 1990) (noting that because "justice courts have never been courts of record" in this state, the appeal to the district court was necessarily a trial de novo at the time of ratification); *Saunders v. Sioux City Nursery & Seed Co.*, 24 P. 532, 534 (Utah 1890) (referring to "justices' courts" as an example of "courts not of record"); 1888 Compiled Laws sections 3657–58 ("Any party dissatisfied with a judgment rendered in a justice's court may appeal therefrom to the district

(continued . . .)

in mind, Mitchell cannot and does not assert that a non-appealable de novo trial failed to live up to the guarantee of a right to an "appeal" under the original Utah Constitution. Instead he claims that the amendments to article VIII of the Utah Constitution in 1984 changed the paradigm of the state constitutional right to an appeal.

¶19 The 1984 amendments omitted the above-quoted language explicitly sanctioning the de novo appeal process. They also added a new section stating that "there shall be in all cases an appeal of right from the court of original jurisdiction to a court with appellate jurisdiction over the cause." *Id.* art. VIII, § 5. Mitchell contends that these changes signaled an intent to abandon the notion that a trial de novo could qualify as an appeal under the constitution. He claims that the ordinary meaning of "appeal" and "appellate" in the 1980s did not encompass a de novo trial. And he thus asserts that the de novo trial process was constitutional from 1896 to 1984 but rendered unconstitutional in 1984.

¶20 We disagree on two grounds. First, we conclude that Mitchell's argument fails under the terms of the Utah Constitution. Then we explain that our holding is reinforced by the doctrine of *stare decisis* and our decision in the *Christensen* case.

## 1. Constitutional Interpretation

¶21 Mitchell's claim fails on its merits for two reasons. First, the 1984 amendments did nothing to alter the guarantee of a "right to appeal in all cases" under article I, section 12 of the Utah Constitution. That right has always been understood to countenance a de novo trial in district court as the final form of review of a justice court judgment. *See supra* ¶ 18. And Mitchell fails to reconcile his position with the longstanding meaning of article I, section 12.

¶22 Second, we see no basis for concluding that the 1984 amendments altered the landscape. The 1984 amendments admittedly eliminated the provision that expressly countenanced the process of de novo trial as the form of appeal from a justice court judgment. And the amended article VIII concededly added a provision stating that "there shall be in all cases an appeal of right from the court of original jurisdiction to a court with appellate jurisdiction over the cause." UTAH CONST. art. VIII, § 5. It does not

---

court . . . . All causes appealed to the district court shall be heard anew . . . .").

follow, however, that the people established a concept of "appeal" or "appellate jurisdiction" that altered the viability of a de novo trial in the district court as an appeal. Our longstanding Utah concept of an "appeal" from justice court—by a de novo trial in district court—is too deeply ingrained in our history to be so lightly set aside.

¶23 Mitchell cites a 1979 law dictionary in support of his contrary view. He notes that that dictionary defines "appeal" as "[r]esort to a superior (i.e., appellate) court to review the decision of an inferior (i.e., trial) court or administrative agency." *In re Marriage of Polacek*, 243 P.3d 1190, 1193 (Or. 2010) (alteration in original) (quoting BLACK'S LAW DICTIONARY 88 (5th ed. 1979)). And he insists that a do-over in district court is not an appeal in this sense because it is not a "review" of a prior decision, but simply a new "trial."

¶24 Mitchell seeks to reinforce this view by invoking the above-quoted addition to article VIII, which contrasts a "court of original jurisdiction" with "a court with appellate jurisdiction." UTAH CONST. art. VIII, § 5. And he also cites 1984 voting materials and newspaper articles to support his view that the 1984 ratifying public would not have viewed a trial de novo as an "appeal" to a "court with appellate jurisdiction." *Id.*

¶25 These points might have some salience in the absence of the deep-seated history of "appeal" by de novo trial in Utah. There is certainly a sense of "appeal" that would encompass only a record review of a lower court decision to determine whether to uphold or reverse its decision. But that narrow conception ignores the distinct history of an "appeal" from a justice court judgment in Utah. Such an appeal has always been in the form of a de novo trial. And there is a sense in which such a trial can be viewed as a "review" of a prior decision. *See Bernat v. Allphin*, 2005 UT 1, ¶ 24, 106 P.3d 707 (explaining that a "de novo trial" is "an appellate review of the conviction—albeit in trial form instead of a more traditional form of appellate review").

¶26 The de novo trial in district court is a "review" of the justice court judgment at least in the sense that a defendant may not receive a harsher penalty in the district court than he was given in the justice court. *Id.* ¶ 26. And in that sense, the district court is also not acting as a court of "original jurisdiction" under article VIII. It is exercising "appellate jurisdiction," under the historical understanding of an "appeal" from a justice court judgment. *See* UTAH CONST. art. VIII, § 5 ("The district court shall have appellate jurisdiction as provided by statute.").

¶27 The 1984 voting materials and newspaper articles are not to the contrary. None of the cited materials even hint at the possibility of eliminating the longstanding process for appealing a justice court decision. Instead, they go out of their way to emphasize that the amendments will *increase* legislative flexibility in designing the Utah appellate system.[3] The legislature, moreover, made no move whatsoever to excise the longstanding statute providing for appellate review of justice court judgments by de novo trial in the district court. For these reasons we see no basis for concluding that the 1984 voters' understanding of an "appeal" upended this longstanding process.

¶28 We reject Mitchell's threshold claim on this basis. A de novo trial is the established means of an appeal from a judgment of a justice court. And nothing in the 1984 amendments to article VIII in any way altered that understanding.

### 2. *Stare Decisis*

¶29 Mitchell's claim also fails as a matter of *stare decisis*. We rejected the claim advanced here by Mitchell a full three decades ago, in *City of Monticello v. Christensen*, 788 P.2d 513 (Utah 1990). And

---

[3] *See e.g.*, David S. Monson, *Utah Voter Information Pamphlet* 14 (1984) (explaining that the amendments would "allow[] the legislature to establish the jurisdiction of . . . courts" other than the supreme court and district court, which would "provide flexibility to address the supreme court's increasing work load" by "allow[ing] for various options" without "mandat[ing] any one solution"); *id.* at 16 (Arguments for) ("*Courts need to be free from outdated restrictions!* The Utah Constitution was written in 1896. It established a court system to meet 1896 needs. Unfortunately, the constitution is not flexible enough to meet changing situations. . . . *Proposition 3 will remove outdated restrictions from the constitution.*"); *Elections to Include Six Ballot Issues*, OREM-GENEVA TIMES, Aug. 15, 1984 (explaining that the amendments would both "guarantee the right of at least one appeal to an appropriate appellate court" and "remove some of the jurisdictional limitations on state courts in order to facilitate better use of such courts for trial and appellate purposes" but failing to mention the abolition of the de novo appeal process as a mechanism to satisfy the "right of at least one appeal to an appropriate appellate court").

the *Christensen* decision is entitled to deference as a well-established precedent.[4]

¶30 "[W]e do not overrule our precedents 'lightly.'" *Eldridge v. Johndrow*, 2015 UT 21, ¶ 21, 345 P.3d 553 (citation omitted). We afford them a weighty measure of deference, in service of the principles of "predictability and fairness" that undergird our doctrine of *stare decisis*. *Id.*

¶31 Two factors are of critical relevance to any decision to overturn a prior decision: "(1) the persuasiveness of the authority and reasoning on which the precedent was originally based, and (2) how firmly the precedent has become established in the law since it was handed down." *Id.* ¶ 22. "The second factor encompasses a variety of considerations, including the age of the precedent, how well it has worked in practice, its consistency with other legal principles, and the extent to which people's reliance on the precedent would create injustice or hardship if it were overturned." *Id.* These factors strongly weigh in favor of upholding our decision in the *Christensen* case.

¶32 In *Christensen* we held that the appellate process contemplated by Utah Code section 78A-7-118(8) "satisfies article I, section 12 and article VIII, section 5." 788 P.2d at 519. We explained that the article I guarantee of a right to an "appeal" in no way excludes de novo review. For "reasons . . . largely historical," we noted that "in Utah . . . it is settled that the right to an 'appeal' from a court not of record is satisfied by provision for a trial de novo in a court of record." *Id.* at 516. This reasoning is in line with our analysis above.

¶33 Our *Christensen* opinion also held that there was "no indication" that the 1984 amendments to article VIII "intended to abrogate the single-judge de novo 'appeal' of justice court decisions." *Id.* at 518. We noted that the amendments "clearly provide[] that 'the district court shall have appellate jurisdiction as provided by statute,'" and cited this as an indication that "the

---

[4] *Christensen* is also significant for another reason. Because it was decided only six years after the 1984 amendments to article VIII, it stands as an almost-contemporaneous historical artifact of the relevant era, and thus lends support to our analysis of the merits set forth above.

district court may be given appellate jurisdiction" under the amended article VIII. *Id.*

¶34 This is in line with our analysis today. And it leaves us convinced of the "persuasiveness of the authority and reasoning on which [*Christensen*] was originally based." *Eldridge*, 2015 UT 21, ¶ 22.

¶35 The second *Eldridge* factor also weighs in favor of our decision to reaffirm *Christensen*. *Christensen* has been on the books for thirty years. It states a clear, straightforward principle of constitutional law that has become "firmly established" in our judicial system. *See id.* ¶¶ 22, 33. Our entire justice court system is built around the constitutional premises of the *Christensen* decision. And a decision to overturn those premises would upset substantial reliance interests. We accordingly reaffirm it under the *stare decisis* standard set forth in our *Eldridge* decision. *See id.* ¶¶ 22 (explaining that workable precedents that sustain significant "reliance" interests and would create "hardship" if overruled are entitled to greater respect).

## B. The Uniform Operation of Laws Clause

¶36 Mitchell next asserts that Utah Code section 78A-7-118(8) runs afoul of the Uniform Operation of Laws Clause of the Utah Constitution. This provision requires that "[a]ll laws of a general nature shall have uniform operation." UTAH CONST. art. I, § 24. At the time of ratification, this provision was understood "to be aimed not at legislative *classification* but at practical *operation*," requiring "consistency in application of the law to those falling within the classifications adopted by the legislature." *State v. Canton*, 2013 UT 44, ¶ 34, 308 P.3d 517. The clause thus required "broad, uniform application across the entirety of a legislative class," and "foreclose[d] special privileges or exemptions from enforcement." *Id.* ¶ 37.

¶37 "The modern formulation of uniform operation is different. It treats the requirement of uniform operation as a state-law counterpart to the federal Equal Protection Clause." *Id.* ¶ 35. Our cases have established a three-step framework for assessing whether a legislative classification runs afoul of the modern formulation of uniform operation. We ask "(1) whether the statute creates any classifications; (2) whether the classifications impose any disparate treatment on persons similarly situated; and (3) if there is disparate treatment, whether the legislature had any reasonable objective that warrants the disparity." *Count My Vote, Inc. v. Cox*, 2019 UT 60, ¶ 29, 452 P.3d 1109 (citation omitted). The "last step incorporates varying standards of scrutiny" under which "most classifications are

presumptively permissible, and thus subject only to rational basis review." *Canton*, 2013 UT 44, ¶ 36 (citation and internal quotation marks omitted). Heightened scrutiny applies only if a classification implicates a fundamental right or draws a distinction based on a "suspect class" such as race or gender. *State v. Robinson*, 2011 UT 30, ¶ 22, 254 P.3d 183. Otherwise the standard is rational basis—a low bar requiring only a "reasonable objective" for any disparate treatment. *See Count My Vote*, 2019 UT 60, ¶¶ 29–31.

¶38 Mitchell's uniform operation claim fails under both the historical and the modern understandings of this guarantee. Mitchell's challenge is to the dual-track nature of a defendant's appeal of a conviction on charges of class B and C misdemeanors, of violation of ordinances, and of infractions. By statute, the justice courts have jurisdiction over these charges. UTAH CODE § 78A-7-106. But not all municipalities operate a justice court. Counties and municipalities "may" opt into the justice court system. *Id.* § 78A-7-102. And in a county or municipality that opts not to establish a justice court, the matters that would be heard by a justice court are heard by a district court. *Id.* § 78A-5-102(8). Appeals from judgments in such cases, in turn, are in the form of a traditional appeal to the court of appeals. *Id.* § 78A-5-102(6).

¶39 This is the classification or disparate treatment that Mitchell complains of. Mitchell notes that some defendants who are charged (as he was) with class B or C misdemeanors have their case heard in district court and are entitled to a traditional appeal. This is the case in municipalities or counties that have opted out of the justice court system. Because Taylorsville has established a justice court, however, Mitchell is left with a justice court trial and appeal by de novo trial in the district court. And he contends that this is an unconstitutional classification resulting in unjustified disparate treatment.

¶40 We disagree. First, this appellate framework is clearly constitutional under the original meaning of the Uniform Operation of Laws Clause. The statutory scheme opens the door to two classes of defendants—those within municipalities or counties that opt in and those within municipalities or counties that opt out. Yet Mitchell has not argued that similar defendants are being treated disparately within those classifications. And his uniform operation claim accordingly fails under the original understanding of this guarantee, as there is no basis for concluding the law is being applied in a manner that grants "special privileges or exemptions" "to those falling within the classifications adopted by the legislature." *Canton*, 2013 UT 44, ¶¶ 34, 37.

¶41 Second, the dual-track appellate framework also withstands scrutiny under the three-step "modern formulation of uniform operation." *Id.* ¶ 35. Mitchell has identified a legislative classification and a resultant disparate treatment—under the above-cited statutes, some defendants facing class B and C misdemeanor (and other) charges get an initial trial in justice court and appeal by a de novo trial in district court, while others facing those same charges are channeled into a district court trial and traditional appeal in the court of appeals. This classification withstands scrutiny at step three, however.

¶42 A key question at this step concerns the standard of scrutiny. Mitchell argues for heightened scrutiny on the ground that the disparate treatment at issue implicates a "fundamental right"—the right to appeal. But this argument fails for all of the reasons noted above in our rejection of Mitchell's first claim. *See supra* Part II.A. Because the constitutional right to an "appeal" is satisfied either by a traditional appeal or by a de novo trial in district court, there is no fundamental right at issue here[5] that can sustain the application of heightened scrutiny.

¶43 This leaves us to apply only rational basis scrutiny—a low bar under which classifications employed by the legislature are "presumptively permissible." *See Canton*, 2013 UT 44, ¶ 36. Under this standard, a "classification is reasonably related to its legitimate objectives" if "the classification is reasonable," "the objectives of the legislative action are legitimate," and "there is a reasonable relationship between the classification and the legislative purpose." *State v. Outzen*, 2017 UT 30, ¶ 20, 408 P.3d 334 (citations omitted).

¶44 We give substantial deference to the legislature in making these assessments. We are not limited to an actual purpose identified by the government. We can "judge . . . enactments on the basis of *reasonable* . . . legislative purposes" under the plain text of the legislation at issue. *Id.* ¶ 21. And we recognize that there is often more than one purpose behind legislation. *Id.*

¶45 The classification at issue here easily clears this low hurdle. The statutory scheme gives counties and municipalities the discretion to opt in or out of the justice court system. So one

---

[5] We need not and therefore do not decide whether the right to appeal is a "fundamental" one that would trigger heightened scrutiny.

apparent legislative purpose is flexibility—letting counties and municipalities choose a trial and appellate structure that is best suited to their needs. A related purpose is deference to local economic considerations. By statute, a county or municipality that establishes a justice court must provide funding and resources for the justice court judge, staff, and security. *See* UTAH CODE § 78A-7-103(1), -206. Some counties or municipalities may decide that the upsides of a justice court system are insufficient to outweigh the costs. And some have made that decision. We cannot say that such a decision is irrational. And we uphold the classification at issue here on that basis.

¶46 The legislature could easily have made a rational decision that a blanket, single-track appeal structure does not adequately serve the needs of the diverse municipalities and counties of this state. The decision to punt to local government is thus eminently reasonable. And we reject Mitchell's uniform operation claim on this basis.

## C. Due Process

¶47 Mitchell's final claim is rooted in a principle of due process. Mitchell asserts that he has a federal due process right to "a meaningful opportunity to assert alleged instances of ineffective assistance against his trial de novo attorney."[6] And he claims that this right was foreclosed by application of Utah Code section 78A-7-118(8), which precluded him from raising ineffective assistance of counsel in the court of appeals.

¶48 This argument falters on its central premise. Michell was not denied a meaningful opportunity to challenge the ineffectiveness of his district court attorney. Under Utah law, Mitchell had two avenues for asserting claims for ineffective assistance of his district court counsel: (a) in the district court, whether at trial or in a post-trial motion; or (b) if such a claim was not "raised or addressed at trial or on appeal," in a post-conviction proceeding under the

---

[6] *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985) ("A first appeal as of right . . . is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney."); *see also State v. Merrill*, 2005 UT 34, ¶ 28, 114 P.3d 585 (noting that the United States Supreme Court has held that due process "can be obtained by a meaningful opportunity for a hearing" (citation omitted)).

Post-Conviction Remedies Act. *See* UTAH CODE § 78B-9-106(1)(b). Mitchell availed himself of the first opportunity. He filed a post-trial motion in the district court, asserting that his district court counsel was ineffective in his de novo trial. And the district court heard that motion and rejected it. For this reason Mitchell is in no position to complain that he must be given an opportunity to raise a claim for ineffective assistance. He had such an opportunity—he raised the claim and it was rejected on its merits.

¶49 Mitchell's real complaint seems to be that he did not have appointed counsel in the post-trial proceedings in the district court— his post-trial motion was filed *pro se*. But Mitchell has cited no salient support for his assertion that this is an affront to due process. And analogous case law undermines his position. *See Pennsylvania v. Finley*, 481 U.S. 551, 556–57 (1987) (explaining that "the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer" in post-conviction proceedings); *see also Hutchings v. State*, 2003 UT 52, ¶ 20, 84 P.3d 1150 ("[T]here is no statutory or constitutional right to counsel in a civil petition for post-conviction relief.").

III

¶50 The briefing in this case has highlighted some potential policy concerns with the process for filing an appeal from a justice court decision. None of these concerns rises to the level of a constitutional problem, however. We affirm the dismissal of this appeal under Utah Code section 78A-7-118(8) because we find that it withstands constitutional scrutiny.

———————————