*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 42**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee*,

*v.*

CHAD JAMES MALO,
*Appellant*.

No. 20180970
Heard May 19, 2020
Filed July 6, 2020

On Certification from the Utah Court of Appeals

Seventh District, Monticello
The Honorable Don M. Torgerson
No. 151700061

Attorneys:

Sean D. Reyes, Att'y Gen., Nathan H. Jack, Asst. Solic. Gen., Salt Lake City, Kendall G. Laws, Monticello, for appellee

Vincent T. Stevens, Ogden, for appellant

JUSTICE HIMONAS authored the opinion of the Court, in which CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

## INTRODUCTION

¶1 Gone are the days when courts poeticized the expungement of criminal records as "unpardonable sin[s]" that "should fly on the wings of a rare bird." *State v. Chambers*, 533 P.2d 876, 879 (Utah 1975) (Henriod, C.J., dissenting). Today's decisions offer a real world take, often describing the "obvious

practical humanitarian objectives" of expungement. *Commonwealth v. Giulian*, 141 A.3d 1262, 1270 (Pa. 2016). It is against the backdrop of this shift in norms that appellant, Chad Malo, asks us to reverse the district court's decision denying his expungement petition.

¶2    Clinically put, this case presents the following question: Did the district court abuse its discretion in determining that Malo failed to prove by clear and convincing evidence that expunging his criminal record in this matter was in the public interest? Per Malo, the district court erred in four regards: (1) relying on the order binding him over to face trial, (2) relying on expunged cases, (3) considering the objection of the State, and (4) giving insufficient weight to Malo's presumption of innocence.

¶3    Because we can make out no error in either how the district court handled this matter or its decision, much less reversible error, we affirm.

## BACKGROUND

¶4    This case doesn't turn on the facts. We recite only those particulars needed for context.

¶5    The State charged Malo with one count of unlawful sexual conduct with a 16- or 17-year-old, a third-degree felony. *See* UTAH CODE § 76-5-401.2. The felony charge was based on the allegations that (1) Malo had sex with Britany and (2) at the time he was in his early forties and she was just seventeen.[1]

¶6    The matter proceeded to a preliminary hearing. At the hearing, Britany testified that days after turning seventeen she went on a houseboat trip to Lake Powell with her family and others, including Malo. She further testified that during the trip Malo unsuccessfully tried to "go up [her] shirt and down [her] pants" and that, at a point later in the trip, "he pushed [her] up against [a] wall" on the houseboat and "proceeded to pull down [her] pants and have sex with [her]."

¶7    The district court issued a written decision binding Malo over as charged. Malo is spot on when he says that the district court commented in its decision that Britany's account contained some "inconsistencies [that] undermine her credibility." But he's off in suggesting that the court threw shade at Britany or the

---

[1] Britany is a fictional name that we adopt to protect the minor's privacy.

State's case in its ruling; indeed, the court went out of its way to remark on Britany's resolve: "[T]he fact that she steadfastly refused to crumble under skeptical, even critical, questioning from her father and her sister, over a period of several hours, supports her credibility."

¶8 The case was set for trial. Shortly before trial, however, Britany was "experiencing serious medical complications making her availability for the [] jury trial impossible," causing the State to file a Motion to Dismiss Without Prejudice. Malo neither opposed the State's motion nor asked that the dismissal be with prejudice. The district court granted the motion and dismissed the matter without prejudice, leaving open the possibility that the State could refile the charge against Malo at a later date.

¶9 Seven months later, Malo filed his expungement petition. The State conceded in response that there was "not a high likelihood" that it would refile criminal charges. Still, it objected, arguing that expunging Malo's arrest record "would be contrary to [the] public interest."

¶10 In support of its objection, the State brought to the district court's attention two other cases in which Malo had faced criminal charges for inappropriate sexual contact with minors. One was in Kane County, where Malo had been charged with six counts of aggravated sexual abuse of a child. He was acquitted on all charges. The other was in Davis County, where he was charged with two counts of sexual abuse of a child, which was dismissed. The Kane County and Davis County cases involved the same two children. Malo had moved for but not yet been granted an expungement in either case when the State lodged its objection.[2]

¶11 An expungement hearing followed. At no time, either at the hearing or in his written response to the State's objection, did Malo object to the State introducing and relying on the Kane and Davis County charges to contest his petition.[3] Indeed, instead of objecting to the State's use of these matters and seeking to shield

---

[2] In connection with the State's opposition, the district court also received letters from Britany and her father. Because the letters are designated as "private," we do not disclose their contents which both parties have been privy to.

[3] By the time of the hearing, Malo knew that the Kane and Davis County matters had been expunged and informed the district court of that fact.

them from the district court's consideration, Malo sought to utilize these expungements as a sword, arguing at the hearing that he "has never been found guilty of anything, much less this crime" and that the judges in the Kane and Davis County matters "found it appropriate" to expunge them. Apparently, Malo felt this construct worked well with one of his two arguments at the hearing, namely his presumption of innocence. Malo's other argument at the hearing, generously read, was that because the State had made clear that it was unlikely to refile charges against Malo with respect to Britany's allegations, it was unable to maintain its objection to the expungement petition.

¶12 Following the expungement hearing, the district court issued a written decision denying Malo's petition on the basis that Malo had failed to establish by clear and convincing evidence that his expungement would not be contrary to the public interests. The court offered three reasons in support of its conclusion, two of which are in play here: (1) the trial court's probable cause determination at the preliminary hearing following Malo's arrest; and (2) the Kane and Davis County prosecutions charging Malo with sexual misconduct.

¶13 Malo timely filed a Notice of Appeal. The matter was originally docketed in the Court of Appeals; however, shortly before oral argument, the Court of Appeals certified the case to us pursuant to Utah Code section 78A-4-103(3) and Rule 43 of the Utah Rules of Appellate Procedure. We exercise jurisdiction under Utah Code section 78A-3-102(3)(b).

**STANDARD OF REVIEW**

¶14 While not bottomless, it is obvious to us that district courts possess deep discretion in deciding whether a petitioner has clearly and convincingly made the case for expungement. The floor is whether the court abused its discretion. *See State v. Chambers*, 533 P.2d 876, 879 (Utah 1975) ("[W]e cannot support the State's claim [that expungement was not in the public interest] . . . because of the discretionary function of the trial court, and because the trial court's performance has not been shown to have exceeded its discretionary boundaries."). However, we assess the subordinate issues that underly a district court's expungement decision differently. We review the district court's underlying factual findings for clear error. *See Arnold v. Grigsby*, 2018 UT 14, ¶ 9, 417 P.3d 606. And we review its legal determinations for correctness, deferring to none. *Id.*

## ANALYSIS

¶15  To succeed before the district court on his expungement petition, Malo had to prove by clear and convincing evidence that: (1) his "petition and . . . certificate of eligibility [were] sufficient;" (2) all "statutory requirements ha[d] been met;" (3) the prosecution had neither refiled charges nor intended to refile charges; and (4) the expungement was "not contrary to the interests of the public." UTAH CODE § 77-40-107(8)(2018).[4] The prosecution spotted him the first three elements, leaving only the question of whether he could establish that the expungement of his criminal record in this matter was not contrary to the public interest. The district court determined that Malo failed to meet his burden on the public interest prong based primarily on the probable cause determination at Malo's preliminary hearing and the charges in the Kane and Davis County matters.

¶16  Malo asks us to reverse the district court for four reasons. First, the district court improperly relied on the order binding him over to face trial. Second, the court improperly relied on the expunged cases. Third, the court should not have considered the State's objection. And fourth, the court gave insufficient weight to the presumption that Malo is innocent of the alleged conduct. Malo is wrong as a matter of law with respect to the first and third arguments. He failed to preserve the second argument for appeal. And as to the fourth, he has failed to carry his burden of establishing that the district court abused its discretion. Accordingly, we affirm the district court's decision denying Malo's petition to expunge from his criminal record his arrest on the charge at issue—unlawful sexual conduct with a 16- or 17-year-old.

¶17  Malo leads off with the argument that the district court erred in taking into consideration the decision to bind him over

---

[4] Because Malo filed his expungement petition on June 21, 2018, and the district court denied the petition on October 30, 2018, the parties refer to the relevant provisions of the Utah Expungement Act, Utah Code section 77-40-101, *et seq.*, (the Expungement Act), in place during that time. We follow suit. We note that the legislature amended the statute several times in 2019 and 2020 to include a possibility for automatic expungement in several types of cases, and to allow for other exceptions, all irrelevant to Malo's case.

for trial. In other words, Malo contends that it is inappropriate per se for a district court adjudicating an expungement petition to rely on an order binding a matter over for trial: "Because such a low threshold is placed on the [p]reliminary [h]earing . . . , it was improper for the court to rely on the fact that the matter was bound over for trial in denying Mr. Malo's expungement."

¶18 We assume that by "low threshold" Malo means our well-established evidentiary and probable cause standards for preliminary hearings. If so, it is true that at a preliminary hearing a magistrate is duty-bound to bind over a defendant if, in "draw[ing] all reasonable inferences in the prosecution's favor," *State v. Schmidt*, 2015 UT 65, ¶ 18, 356 P.3d 1204 (citation omitted), she finds "sufficient evidence to support a reasonable belief that an offense has been committed and that the defendant committed it," *id.* ¶ 20 (citation omitted) (internal quotation marks omitted), i.e., probable cause, *Id.* (citations omitted) (internal quotation marks omitted). It is also true that a magistrate is limited when it comes to making credibility determinations in the course of a preliminary hearing. *See State v. Virgin*, 2006 UT 29, ¶¶ 17–25, 137 P.3d 787, *holding modified on other grounds in State v. Levin*, 2006 UT 50, ¶ 31, 144 P.3d 1096.

¶19 Yet, nothing about or even within earshot of these standards tells us that a district court judge, in ruling on an expungement petition, cannot or should not take into account the reality that a defendant was bound over—or not—for trial. Likewise, nothing tells us that a district court cannot or should not consider the evidence put forth at the preliminary hearing.[5] Malo certainly hasn't referred us to any legal authorities. On this score, his briefs are legally blank: no citation to the United States Constitution, the Utah Constitution, federal or state statutes or rules, case law, legal treatises, or law review articles. And in the absence of any such authorities, we are unwilling to bind the hands of a district court judge charged with determining whether an expungement is in the public interest. Therefore, we decline to credit Malo's first argument. The district court had the authority to consider—and acted well within its discretion in taking into account—the decision to bind over Malo, as well as any evidence adduced at his preliminary hearing.

---

[5] We also take care to note that it is certainly possible that in an expungement case to come, it is the defendant asking the district court to grasp and rely on such evidence.

¶20 Malo's next argument—that the district court improperly relied on the expunged cases—fares even worse. Malo never objected, either orally or in writing, to the district court considering the expunged cases. If anything, he sought to make use of the fact that the judges overseeing the Kane and Davis County matters had seen fit to expunge those charges. *See supra* ¶ 11.[6] And "[w]hen a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and . . . [we] will not typically reach that issue absent a valid exception to preservation," *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443,[7] which Malo has not argued for.[8]

---

[6] Malo is careful to avoid claiming he preserved the argument; rather, he asserts, accurately, that "[t]he Court was advised that the prior cases had been expunged."

[7] We are well within our prerogative to raise a preservation issue on our own initiative when it provides an alternative basis for affirmance, even if the State failed to brief the preservation argument. *See, e.g., Limb v. Federated Milk Producers Ass'n*, 461 P.2d 290, 293 n.2 (Utah 1969) ("The appellate court will affirm the judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not raised in the lower court, and was not considered or passed on by the lower court."); *see also Taylorsville v. Mitchell*, 2020 UT 26, ¶ 13, --- P.3d --- (noting that a similar posture "leaves us with substantial discretion as to how to proceed."). But while it is within our "wide discretion" to "decide[] whether to entertain . . . matters that are first raised on appeal," *Patterson v. Patterson*, 2011 UT 68, ¶ 13, 266 P.3d 828, we do note that the State's failure to make the argument is not an advisable practice, and its effect was that Malo could not address the argument in his reply. In another case, such failure could mean we would decide to address the matter on appeal despite the lack of preservation. *See, e.g., Mitchell*, 2020 UT 26, ¶ 15; *State v. Boyles*, 2015 UT App 185, ¶ 18 n.7, 356 P.3d 687.

[8] As we stated in the Background, the State brought to the district court's attention two other cases, involving two other minors. *See supra* ¶ 10. But in its order, the district court stated

(continued . . .)

¶21 Malo's penultimate argument is that the district court erred in considering the State's objection to his petition. For support, Malo points us to the following language in the Expungement Act: "A prosecutor who opposes an expungement of a case dismissed without prejudice or without condition shall have a good faith basis for the intention to refile the case." UTAH CODE § 77-40-107(9)(b)(2018). Further, he argues, the district court "was aware of the requirements of" the Expungement Act and even acknowledged that the State had made no intention of refiling the matter. Ergo, according to Malo, the district court stepped out of bounds when it relied on the State's objection. But Malo misreads the Act's strictures.

¶22 When it comes to questions of statutory interpretation, "[o]ur goal . . . is to evince the true intent and purpose of the Legislature. It is axiomatic that the best evidence of legislative intent is the plain language of the statute itself." *Bryner v. Cardon Outreach, LLC*, 2018 UT 52, ¶ 9, 428 P.3d 1096 (citation omitted) (internal quotation marks omitted). Therefore, "[t]he first step of statutory interpretation is to look to the plain language, and '[w]here statutory language is plain and unambiguous, this Court will not look beyond the same to divine legislative intent. Rather we are guided by the rule that a statute should generally be construed according to its plain language." *Id.* (second alteration in the original) (quoting *Garrard v. Gateway Fin. Servs., Inc.*, 2009 UT 22, ¶ 11, 207 P.3d 1227). In doing so, we read the statute as a whole, interpreting "its provisions in harmony with other statutes in the same chapter and related chapters." *Id.* ¶ 10 (citation omitted) (internal quotation marks omitted).

¶23 The plain language of the Expungement Act does not support Malo's interpretation. Subsection 107(3) of the Expungement Act unconditionally provides that "[t]he prosecuting attorney and the victim, if applicable, may respond to the [expungement] petition by filing a recommendation or objection with the court within 35 days after receipt of the petition."[9] UTAH CODE § 77-40-107(3)(2018). Upon receipt of an

---

Malo was prosecuted "for sexual misconduct with three other minor children." Malo did not argue against that finding, and even if it was erroneous, it matters not when looking at the district court's reasoning as a whole.

[9] Malo did not challenge the State's objection as untimely, either below or on appeal.

objection, the court is obligated to set a hearing and to "notify the petitioner and the prosecuting attorney of the date set for the hearing." *Id.* § 77-40-107(6)(a)(2018). The prosecuting attorney, among others, may then "testify at the hearing." *Id.* § 77-40-107(6)(b)(2018). Thus, the Expungement Act clearly provides the State, acting through the prosecuting attorney, with the right to support or object to a petition for expungement, both orally and in writing.

¶24 Subsection 77-40-107(9)(b)(2018) of the Expungement Act, the language Malo relies on, while not irrelevant to the exercise of this right, has no play in this matter. Here's why. Under subsection 77-40-107(8), one of the conditions of expungement with respect to cases dismissed without prejudice, like Malo's, is that the court "find[] by clear and convincing evidence that . . . the prosecutor provided written consent and has not filed or does not intend to refile related charges." *Id.* § 77-40-107(8)(c)(2018). Subsection 77-40-107(9)(b) (which, recall, states that "[a] prosecutor who opposes an expungement of a case dismissed without prejudice or without condition shall have a good faith basis for the intention to refile the case,") then, read in context, places a "good faith" limitation on the prosecuting attorney's ability to prevent an expungement by simply representing to the court that they intend to refile charges. *Id.* § 77-40-107(9)(b)(2018). But it is undisputed that the State has no intention of refiling the charges against Malo, causing us to conclude that subsection 9(b) does not apply in this case.

¶25 The final argument Malo makes to us is that the district court improperly weighed Malo's presumption of innocence. This argument essentially reduces to the following: (A) Malo is presumed innocent of the charge against him; (B) the State has no intention of refiling the charge; therefore, (C) the district court cannot find that expungement is contrary to the public interest. Thus, accepting Malo's articulation of the presumption of innocence effectively means the elimination of a petitioner's burden to show expungement is not contrary to the public interest anytime a case is dismissed without prejudice, and where there is no intention to refile. And he made this exact point clear at oral

argument before us. But nothing in the text of the Expungement Act sustains such a result.[10]

¶26 We are not callous to Malo's plea. To be sure, expungements often do serve the public interest. And there is certainly nothing in today's statutory scheme or our current jurisprudence that even remotely suggests that expungements are "unpardonable sin[s]" limited to journeys "on the wings of a rare bird." *State v. Chambers*, 533 P.2d 876, 879 (Utah 1975) (Henriod, C.J., dissenting). But this backdrop in no way translates into a determination by us that the district court improperly credited the presumption of innocence, thereby abusing its discretion in concluding that Malo had failed to establish by clear and convincing evidence that granting his petition was not contrary to the interests of the public. A mere invocation of the "presumption of innocence," given the circumstances in this case, is simply not enough.

## CONCLUSION

¶27 The district court did not abuse its discretion when it denied Malo's expungement petition. We affirm.

––––––––––––

[10] To be completely fair to Malo on this point, he also argues that he has "suffered significant prejudice despite the fact that the case was dismissed" and is "forced to proffer an explanation of the charges anytime a background check is completed on him." Malo then recites the district court's reasoning rejecting this argument: "The Court considered the prejudice to Mr. Malo and determined that the individual prejudice is insufficient to establish that this expungement is not contrary to the interest of the public." Nothing about the district court's response hints at an abuse of discretion, and we adopt it.