2019 UT App 187

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ROBERT BRIAN WALTON,
Appellant.

Opinion
No. 20170977-CA
Filed November 21, 2019

Third District Court, Salt Lake Department
The Honorable Paul B. Parker
No. 121903179
The Honorable Mark S. Kouris
No. 161907013

Deborah L. Bulkeley, Attorney for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

APPLEBY, Judge:

¶1     In 2014, Robert Brian Walton entered an *Alford* plea[1] to
one count of retaliation against a witness, KB, a woman he had
previously dated. As part of his sentence, Walton agreed to the

---

1. "An *Alford* plea is a type of guilty plea in which a defendant
does not expressly admit his guilt, but nonetheless waives his
right to a trial and authorizes the court for purposes of the case
to treat him as if he were guilty." *State v. Archuleta*, 2019 UT App
136, ¶ 5 n.2, 449 P.3d 223 (quotation simplified).

entry of a permanent criminal stalking injunction (Injunction), which prohibited him from contacting KB and her family. In 2017, after violating the Injunction, Walton asked the district court to vacate the Injunction as an "illegal sentence." The court denied the motion and we affirm.

BACKGROUND

¶2     Walton and KB started dating in 2010 but the relationship began to sour the following year. In 2011, KB tried to end the relationship but Walton continued to contact her. Walton went to KB's workplace after repeatedly calling her, to convince her to go to his house. He yelled, "Know your place. Submit, woman." KB called the police and made a report. After KB filed the police report, Walton began contacting her saying she needed to "fix" the report and "get rid of it" because it was going to hurt his career.

¶3     KB made several other police reports that same year. On one occasion, Walton went to KB's birthday party and got into an altercation with one of the guests. He showed up at her apartment the following day and demanded information about the police report she filed. He refused to leave her apartment and demanded she "sleep with him" and "tried to take [her] clothes off." KB sent a text message to one of her coworkers to call the police.

¶4     Over the next several months, Walton continued to contact and send text messages to KB, telling her, "You're fucked. You're in so much trouble. You need to take care of this." Walton also told KB "he was gonna take [her] out like game." When asked at the preliminary hearing what she thought that statement meant, KB responded, "I took it as a threat. I said, 'Are you threatening me?'"—at which point Walton hung up the phone.

¶5     In early 2012, KB received a text message from Walton telling her she "should go home," she was in "so much trouble," and "ignoring this [was] going to cost [her] dearly." These statements scared KB and she called the police who offered to escort her to her apartment after work. About one month later, Walton showed up at KB's apartment and tried to get money from her. He followed her from her apartment to her car. After another car pulled into the parking lot, Walton walked away saying, "[Y]ou deserve everything you're gonna get."

¶6     KB attempted to cut off all communication with Walton but he continued to call her and send her text messages. KB even tried moving her household in an effort to get him to leave her alone. She moved her belongings at night and during times she thought he would not be around. But within a couple of days, Walton left her a note on her door and a voicemail telling her he wanted money and to meet him at a cafe across the street from her new apartment. KB stated she was not sure how Walton was able to find her new address and thought he may have followed her from work. After this, KB began staying at her parents' house. She was frightened and tried to have Walton served with a civil stalking injunction.

¶7     One day, KB stopped at her new apartment after work to collect some belongings to take to her parents' house. She parked on the street and noticed a car pull up nearby. Once KB realized it was Walton, she turned around and ran back to her car. Before KB was able to lock herself in her car, Walton ran toward her and opened the car door. Walton grabbed KB by her hair and began hitting her head against the steering wheel. She started honking the horn. He demanded she give him her cell phone; she told him it was in the back and she could not get to it. As the struggle continued, KB began screaming and hitting the panic button on her car keys. KB dropped her keys and Walton grabbed them. She begged Walton to give back her keys and let her go. Walton responded he would not unless she paid him money and signed paperwork stating he was not a threat to her.

During this time, Walton pulled KB out of the car and again grabbed her hair and began hitting her head on the back window. He threatened to "snap [her] neck" if she did not sign the documents. A woman drove by and asked KB if she was okay. Walton told the woman, "Don't worry about it, she's just crazy." The woman asked if she should call the police. KB told Walton that if he gave the woman KB's car keys then KB would sign the papers. KB signed the documents and Walton threw her keys to the woman and told KB, "I know you've called the police." As he was leaving he said to KB, "If you call the police I will hunt you down for as long as it takes and kill you." KB got into the woman's car with her and called the police.

¶8    The State charged Walton with (1) retaliation against a witness, victim, or informant, a third-degree felony; (2) stalking, a class A misdemeanor; (3) assault, a class B misdemeanor; (4) unlawful detention, a class B misdemeanor; and (5) threat of violence, a class B misdemeanor. In this opinion, we refer to this criminal case, filed in 2012, as the Retaliation Case. Walton and the State entered into a plea agreement that was preapproved by the district court under rule 11 of the Utah Rules of Criminal Procedure. Walton entered an *Alford* plea to retaliation against a witness, and the remaining charges, in addition to other criminal charges on a separate matter relating to KB, were dismissed. As part of the plea agreement, the State agreed not to prosecute Walton for any other potential criminal charges arising from his relationship with KB before the date of the plea agreement. Walton also agreed to the entry of the Injunction, which prohibited him from contacting KB and her family. Also consistent with the plea agreement, the court sentenced Walton to 330 days in jail with credit for time served and closed the case.

¶9    After the district court sentenced Walton and closed the case, the State presented Walton with the Injunction. The court asked whether Walton agreed to have the Injunction entered against him and he responded that he had "absolutely no

problem not contacting [KB]" and agreed to have it imposed. The court signed, sealed, and served it on Walton that day.

¶10   About eighteen months later, Walton contacted KB in violation of the Injunction. KB stated that, one day, while she was using her laptop on her front porch, Walton approached her with his "hands up" and proceeded to talk to her. Walton asked KB what she was going to do to "help his situation." KB asked whether he was looking for money but he told her he wanted her help to "save his good name." Walton repeatedly asked KB whether she was going to call the police. After about an hour of conversation, Walton walked away. KB called the police to notify them that Walton violated the Injunction.

¶11   The next day, KB went to work and Walton pulled into the parking lot and again engaged in conversation with her. He asked her if she was going to call the police. She told Walton she could not talk to him and walked into the office building. Later that day, while KB was driving, Walton pulled up next to her and it looked as though he was trying to talk to her. KB did not roll down her window and Walton drove off. KB called the police and sent an email to the prosecutor, letting him know about the Injunction violations.

¶12   The State charged Walton with three counts of stalking in violation of the Injunction. In this opinion, we refer to this second case, filed in 2016, as the Stalking Case. Walton responded to the Stalking Case in part by filing a motion in the Retaliation Case, invoking rule 22(e) of the Utah Rules of Criminal Procedure and asking the court to correct the sentence that had been imposed upon him in the Retaliation Case. Specifically, Walton contended that the imposition of the Injunction in the Retaliation Case was improper and illegal, and asserted that, without the Injunction, the charges in the Stalking Case were groundless. The court denied the motion.

¶13   Several months later, Walton and the State entered into a plea agreement resolving the Stalking Case. Pursuant to that

agreement, Walton entered an *Alford* plea to one count of stalking, and the State dismissed the other two counts with prejudice. The court sentenced Walton to a suspended, indeterminate prison term of zero to five years and placed Walton on probation for thirty-six months. The court also issued another permanent criminal stalking injunction that prohibited Walton from contacting KB, her family, and the employees of the district attorney's office. Walton filed a motion to reconsider the court's order on his rule 22(e) motion. In the motion, he asked the court to terminate his probation and "mind [its] own business" because he had been punished enough and would now be labeled "a stalker for time and memoriam." The court denied the motions.

## ISSUE AND STANDARD OF REVIEW

¶14    Walton argues that, in the Retaliation case, the district court erred in denying his motion to vacate the Injunction under rule 22(e) of the Utah Rules of Criminal Procedure.[2] We review the denial of a rule 22(e) motion for correctness. *State v. Wynn*, 2017 UT App 211, ¶ 11, 407 P.3d 1113.

## ANALYSIS

¶15    Walton argues the district court erred in failing to correct his sentence under rule 22(e) of the Utah Rules of Criminal Procedure. He contends a permanent criminal stalking injunction can be imposed only upon a conviction for stalking,

---

2. Walton also argues if we find the Injunction was entered as an illegal sentence, then we also should vacate his subsequent stalking conviction for violating the Injunction. But Walton failed to timely appeal his conviction in the Stalking Case and therefore we decline to reach the merits of his argument on this issue.

not retaliation against a witness, and the Injunction exceeded the statutorily authorized maximum sentence.[3]

¶16 Under rule 22(e)(1) of the Utah Rules of Criminal Procedure, a district court can correct a sentence at any time if it (1) "exceeds the statutorily authorized maximums," (2) "is less than statutorily required minimums," (3) "violates Double Jeopardy," (4) "is ambiguous as to the time and manner in which it is to be served," (5) "is internally contradictory," or (6) "omits a condition required by statute or includes a condition prohibited by statute." In this case, Walton invokes the first and the last of these categories, arguing the Injunction "exceeds the statutorily authorized maximums" and "includes a condition prohibited by statute." Utah R. Crim. P. 22(e)(1)(A), (F).

¶17 Walton argues the Injunction "exceeds the statutorily authorized maximums," *id.* R. 22(e)(1)(A), because the Injunction is a life-long restriction that extends his sentence well beyond the five-year maximum for a third-degree felony conviction of retaliation against a witness, *see* Utah Code Ann. § 76-8-508.3(2) (LexisNexis 2017) (providing that retaliation against a witness convictions are third-degree felonies); *id.* § 76-3-203(3) (articulating that prison sentences for third-degree felonies are not to exceed five years). Walton is mistaken. The term "maximums" used in rule 22(e) refers to the maximum periods for incarceration described in Utah Code section 76-3-203. This

---

3. The State argues we can affirm Walton's conviction on the basis that the Injunction was entered as part of his plea agreement, not his sentence, and therefore rule 22(e) is inapplicable. We disagree. In *State v. Kropf*, this court applied rule 22(e) in the context of evaluating whether a permanent criminal stalking injunction was an illegal sentence. 2015 UT App 223, ¶ 24, 360 P.3d 1. Accordingly, we conclude the Injunction was part of Walton's sentence that, if illegal, could be remedied under rule 22(e).

provision does not limit the court's ability to impose other sanctions, such as stalking injunctions, that may exceed a term of five years.

¶18 And nothing in the retaliation statute—or in any other statute of which we are aware—prohibits district courts from imposing permanent criminal stalking injunctions as part of a sentence. *Id.* § 76-8-508.3. Walton contends because the stalking statute *authorizes* district courts to enter permanent criminal stalking injunctions upon a conviction for stalking, such injunctions are appropriately imposed only in this context and not for convictions of retaliation against a witness. *Id.* § 76-5-106.5(9)(b) (Supp. 2019). But this misses the point. Under rule 22(e), a sentence may be deemed illegal if it includes a condition *prohibited* by statute. Utah R. Crim. P. 22(e)(1)(F). Walton has not identified any statute prohibiting district courts from entering stalking injunctions as part of a sentence for a conviction of retaliation against a witness.

¶19 Furthermore, absent circumstances not present here (for instance, a "mistake as to the law in effect at the time the parties entered into the plea agreement," *State v. Patience*, 944 P.2d 381, 388 (Utah Ct. App. 1997)), Walton cannot accept the benefits of a plea bargain and then argue that the sentence imposed as part of that bargain was invalid after it does not work in his favor. The State offered Walton a favorable plea deal in exchange for the entry of the Injunction. It agreed to dismiss the remaining charges in the information, to dismiss other outstanding charges relating to KB, to forgo prosecution of any other crimes relating to KB that occurred prior to the plea date, and that Walton should be sentenced to 330 days in jail with credit for time served. Importantly, when asked whether he agreed to having the Injunction entered against him, Walton responded he had "absolutely no problem not contacting [KB]." We conclude that, under these circumstances, Walton cannot agree to a particular sentence, enjoy its benefits, and then attempt to withdraw it after the court imposes the stipulation.

CONCLUSION

¶20    The district court did not err in denying Walton's motion to correct his sentence because imposing the Injunction was not an illegal sentence under rule 22(e). Affirmed.

––––––––––