**2020 UT App 117**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
JOSE LUIS ALMAGUER,
Appellant.

Opinion
No. 20190120-CA
Filed August 13, 2020

First District Court, Logan Department
The Honorable Thomas Willmore
No. 171100373

Michael C. McGinnis, Attorney for Appellant

Sean D. Reyes and David A. Simpson, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Jose Luis Almaguer appeals his conviction of rape, a first-degree felony. We affirm.

## BACKGROUND

¶2     A woman (Victim) dropped her children off at a friend's house while she went on a date. When she returned to pick up her children late at night, she encountered Almaguer, her friend's husband, on the front porch. After he told her the children were sleeping, she asked if she could sleep on the couch so she would not wake them. This is where Victim's and Almaguer's stories diverge.

¶3     Victim asserted that Almaguer asked her to join him in the backyard while he smoked a cigarette before going inside to sleep. She claimed they sat on a porch swing together for about half an hour while Almaguer asked her personal questions that made her feel uncomfortable. She finally asked whether she could go inside to sleep. He agreed, and she went in and lay down on the couch by her children. However, Almaguer kept "walking through the room," at one point bringing her a blanket after she had told him she did not need one. She hoped that if she closed her eyes, he would leave her alone. But instead, she soon felt his hands on her. He groped her breasts and put his hand under her waistband, touching her vagina and anus. She pretended to be asleep because she "was scared and shocked," was afraid to wake her children, and "was worried about what would happen to [her] or [her] kids if [she] tried to fight."

¶4     Almaguer then stopped and walked away. Victim was scared to leave right then and "didn't know what to do." But soon Almaguer returned. This time, he quickly pulled Victim down the couch and flipped her onto her stomach. He then raped her while she continued to pretend she was asleep. She explained, "I was just completely not responding at all. I was limp and I was just thinking about my kids like, don't wake up, don't wake up, don't wake up." When Almaguer finally stopped and went upstairs, Victim continued to lie on the couch with her children. She was scared to leave too quickly because she did not want Almaguer to know she had been awake the whole time and was worried that if he heard them leave, he might chase after them. However, "as soon as light hit," she woke her children and took them home.

¶5     Victim reported the incident to police the same day and received a physical examination. She told the nurse examiner the same story she later told at trial. The examination found sperm on Victim's cervix that matched Almaguer's DNA.

¶6 Detectives interviewed Almaguer about the incident. He repeatedly claimed not to know Victim and stated that he did not have sex with her or do "anything" with her. However, at trial, he told a different story.

¶7 On the stand, Almaguer testified that he was smoking methamphetamine the night of the incident and that Victim offered to perform sexual favors in return for drugs. After they smoked, she pulled down her own pants and began touching herself. She then performed oral sex on him. Almaguer claimed that Victim wanted to have sex with him, but he refused. So instead, Victim asked him "to ejaculate on her hand" so she could "continue to touch herself," and he complied. He testified that afterward, he took her inside to sleep on the couch with her kids. He gave her a blanket, went upstairs, and "never saw her again." To explain the inconsistencies in his testimony, Almaguer claimed that he had difficulty understanding some of the officers' questions in English and that he wanted to keep the truth from his wife.

¶8 In rebuttal to Almaguer's testimony, the nurse examiner testified that the cervix is located toward "the back end of the vagina" "typically three to four inches" from the vaginal opening; Victim denied performing oral sex on Almaguer, asking him to ejaculate on her, or touching herself; and the interviewing detective, who speaks Spanish fluently, testified that he did not perceive any issues with Almaguer's ability to speak and understand English.

¶9 During closing argument, both Almaguer's counsel and the prosecutor argued that their witnesses had told the truth and that the other side's witnesses had lied. At issue on appeal, the prosecutor, in closing argument, stated,

> And I'm going to look at that story just a little bit more because [Almaguer] testified under oath. He testified under oath that this is what

happened after he lied to [the police] about everything. He lied to you under oath. He perjured himself. Think about it. And again I apologize. It's a little graphic, but his story is that she is pleasuring herself and decides to give him a blow job and asks him to put it on her hand. Whatever happened to any—I mean really? That kind of thinking only happens in the mind of someone who is into the fantasy world.

Let's think about that physically. Did she have a catcher's [mitt] because I'm pretty sure when ejaculate comes out, it's coming out with some force. Is she—how is she catching that? Is she—what happens when it hits her hand? Is that—did she suddenly decide okay I've got to get that up on my cervix so excuse me and engages in some kind of gymnastics? What's she going to do? Like pull her pants down. She has to turn her hand like this [to] get all the way up in there. Are you kidding me? If she was truly pleasuring herself that's on the outside of a woman's body. She's not going to be all up in her cervix. Is it reasonable to believe that story? It is absurd. It was concocted by Mr. Almaguer to get him out of trouble.

Following the prosecutor's remarks, the trial court intervened and instructed the jury,

Jurors, I want to correct a couple of things that were said during the closing arguments. Once again, Instruction 18 tells you that [lawyers' statements] and arguments are not evidence. And that's an instruction that you must follow. During the closing arguments there were several times the lawyers made statements about who they believe is

credible or believable. That's not their job. Your job is to decide who is credible, who is believable. That's your decision and your decision only and not the lawyers. It's not what an attorney thinks.

So your job as I've instructed you in several instructions is to assess the credibility of each witness and you believe what you feel you should believe and you believe who you feel you should believe and not what an attorney thinks or says. You must make, as I've told you in many of the instructions, your decision is based on the evidence only. However, as you were instructed, you can draw inferences from that evidence and you can use common sense.

Finally, it was mentioned by [the prosecutor] that the defendant may have perjured himself. Now that's a strong word. And you are to completely disregard that statement made by the State's attorney. And you are not to consider it in your deliberations. Once again, it's up to you who you decide to believe and what to believe.

¶10 The jury found Almaguer guilty, and the court sentenced him to a prison term of five years to life. Almaguer now appeals.

ISSUE AND STANDARD OF REVIEW

¶11 Almaguer argues that the prosecutor engaged in prosecutorial misconduct when she stated that he lied on the stand and accused him of committing perjury. Almaguer did not preserve this issue for review and therefore asks us to review it for plain error. To prevail on a plain error claim, an appellant must show that "(i) an error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful, i.e.,

absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Holgate*, 2000 UT 74, ¶ 13, 10 P.3d 346 (quotation simplified).[1]

ANALYSIS

¶12 "A prosecutor commits misconduct during closing arguments when the prosecutor's actions or remarks call to the attention of the jury a matter it would not be justified in considering in determining its verdict." *State v. Johnson*, 2007 UT App 184, ¶ 42, 163 P.3d 695 (quotation simplified). For example, "a prosecutor engages in misconduct when he or she expresses personal opinion or asserts personal knowledge of the facts."

---

1. Almaguer also argues that Victim's testimony was so inherently improbable that it should have been disregarded and that the evidence was insufficient without that testimony to support the verdict. However, Almaguer has not demonstrated that he preserved this issue for our review, and he has not asserted that we should consider the issue under any exception to the preservation rule. Almaguer moved for a directed verdict, but the basis for his motion was limited to the issue of consent. He argued that even if the jury accepted Victim's testimony, there was no evidence that she said "no" and that the jury therefore could not convict Almaguer of rape. Because Almaguer did not argue that the trial court should disregard Victim's testimony in its entirety as inherently improbable, he did not preserve that issue for appeal, and we do not consider it further. *See State v. Skinner*, 2020 UT App 3, ¶ 29, 457 P.3d 421 ("A defendant who wants a trial court to disregard a witness's testimony under [*State v. Robbins*, 2009 UT 23, 210 P.3d 288,] before, or in connection with, undertaking a sufficiency-of-the-evidence review must make that request known to the trial court so that the court has an opportunity to rule on the issue.").

*State v. Davis*, 2013 UT App 228, ¶ 35, 311 P.3d 538 (quotation simplified), *abrogated on other grounds by State v. Ringstad*, 2018 UT App 66, 424 P.3d 1052. But "a prosecutor may draw permissible deductions from the evidence and make assertions about what the jury may reasonably conclude from those deductions." *Id.* (quotation simplified).

¶13 "In determining whether a given statement constitutes prosecutorial misconduct, the statement must be viewed in light of the totality of the evidence presented at trial." *State v. Todd*, 2007 UT App 349, ¶ 14, 173 P.3d 170 (quotation simplified). Therefore, addressing matters of prosecutorial misconduct is largely left to the discretion of the trial court, since "the trial court is in the best position to determine the impact of a statement upon the proceedings." *Id.* (quotation simplified). Having evaluated all the circumstances, the trial court may determine that a curative instruction is sufficient to alleviate any prejudice, or it may determine that the prosecutorial misconduct is so prejudicial that a mistrial is necessary. And we will reverse the court's determination only for an abuse of discretion. *Id.*

¶14 Almaguer claims that it was prosecutorial misconduct for the prosecutor to accuse him of committing perjury and to attack his credibility as a witness during closing. He claims that this misconduct was unfairly prejudicial and requires us to reverse and remand for a new trial.[2] But Almaguer did not object to the prosecutor's statement below or ask the trial court to remedy the alleged misconduct in any way. Rather, after the closing arguments, the trial court intervened on its own, reminding the jurors that it was their job to determine credibility and

---

2. He also appears to take issue with what he characterizes as the prosecutor's "sexually-graphic sarcasm," but he does not separately analyze this aspect of the prosecutor's statements, and therefore, neither do we.

instructing them to disregard the prosecutor's perjury accusation.

¶15 On appeal, Almaguer asks us to review the prosecutorial misconduct issue for plain error. However, he makes no attempt to properly analyze the issue under the plain error doctrine. Rather than focus on whether the trial court committed obvious error by striking the perjury statement and issuing the curative instruction it did instead of employing some other remedy, such as declaring a mistrial, Almaguer's entire analysis focuses on whether the prosecutor committed misconduct and whether that misconduct was prejudicial.

¶16 But it is not our role to "review the actions of counsel—at least not directly." *State v. Hummel*, 2017 UT 19, ¶ 107, 393 P.3d 314. Rather, we "focus our analysis on *district court decisions*." *Id.* ¶ 106. "[O]ur plain error analysis asks not whether the prosecutor made a misstep that could be characterized as misconduct, but whether the trial court made an 'obvious' error in its decision." *Id.* ¶ 105 (quotation simplified). Therefore, "we cannot properly conclude that every misstep of counsel in closing amounts to plain error—subject only to proof of prejudice." *Id.* ¶ 110. Instead, we must consider "whether counsel's missteps were so egregious that it would be plain error for the district court to decline to intervene sua sponte." *Id.* Almaguer does not analyze this question at all, and we see nothing to suggest to us that the trial court plainly erred by not taking a different action.

¶17 First, there is nothing inherently improper about a prosecutor calling the defendant a liar. Indeed, "a prosecutor's statement that a witness is lying is analyzed under the same test as any other comment on the credibility of a witness." *State v. Thompson*, 2014 UT App 14, ¶ 59, 318 P.3d 1221. If the statement that the defendant lied is a "fair inference" that is supported by the evidence, it is not improper. *Id.* ¶ 61. And while the

accusation of perjury arguably goes beyond merely commenting on the defendant's credibility, we are not convinced that it should have been obvious to the trial court that the prosecutor's statement, to which no objection was lodged, constituted prosecutorial misconduct so egregious that it required the court to take action beyond the curative instruction it gave.

¶18 Further, we are not convinced that Almaguer suffered prejudice as a result of the prosecutor's misstatement. The court swiftly and explicitly condemned the prosecutor's perjury statement, directing the jury to "completely disregard that statement" and "not to consider it in [its] deliberations." Moreover, it reiterated the jurors' responsibility to use their own judgment to assess the witnesses' credibility rather than relying on the lawyers' credibility assessments. Almaguer has failed to "show that the prosecutor's comment was so prejudicial as to defeat the mitigating effect of the court's curative instructions." *See Taylor v. State*, 2007 UT 12, ¶ 115, 156 P.3d 739 (quotation simplified); *see also State v. Wright*, 2013 UT App 142, ¶ 42, 304 P.3d 887 ("In the absence of any circumstances suggesting otherwise, courts presume that the jury follows [curative] instructions."). Thus, he cannot establish that the court committed plain error in its handling of the alleged prosecutorial misconduct.

## CONCLUSION

¶19 Almaguer has not established that the trial court committed plain error in addressing the alleged prosecutorial misconduct. We therefore affirm Almaguer's conviction.

————