**2020 UT App 160**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
DEVIN LEE WILKERSON,
Appellant.

Opinion
No. 20190633-CA
Filed November 27, 2020

Fourth District Court, Provo Department
The Honorable M. James Brady
No. 181402439

Bryson King and Douglas J. Thompson, Attorneys
for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which JUDGES
DAVID N. MORTENSEN and DIANA HAGEN concurred.

HARRIS, Judge:

¶1      Under Utah law, persons who spend time incarcerated in county jails may be required to reimburse the county for "the cost of incarceration." *See* Utah Code Ann. § 76-3-201(6) (LexisNexis 2017) (the Pay-to-Stay Statute). After pleading guilty to one misdemeanor count of drug possession, Devin Lee Wilkerson was ordered to pay $1,939.65 to Utah County for the cost of his 111-day pre-plea detention in the Utah County Jail. Wilkerson appeals that restitution order, asserting that the Pay-to-Stay Statute does not authorize reimbursement for jail time served prior to conviction. He also asserts that the court's restitution order violated principles of due process. We affirm.

## BACKGROUND

¶2    One night in August 2018, Wilkerson and a friend were skateboarding in a road near an intersection. A police officer patrolling nearby saw the two men and stopped them, believing that their skateboarding in the street was unlawful. The officer soon discovered that there was a valid warrant out for Wilkerson's arrest. The officer then arrested Wilkerson, searched him, and found methamphetamine on his person. Wilkerson was booked into the Utah County Jail that same day, and a few days later the State charged him with drug possession—which in his case was charged as a third-degree felony due to prior convictions—and possession of drug paraphernalia, a class B misdemeanor. Soon thereafter, after spending approximately sixteen days in jail, Wilkerson was released on his own recognizance while the case proceeded.

¶3    Several weeks later, Wilkerson failed to appear at a scheduled hearing in the case, and the court issued a warrant for his arrest. Wilkerson was subsequently arrested and again booked into the Utah County Jail, where he spent more than ninety additional days before he posted bail. In total, Wilkerson ended up spending 111 days in the Utah County Jail, all of which took place pre-plea and pre-sentencing.

¶4    Eventually, Wilkerson negotiated a plea agreement with the State, under which the State agreed to reduce the drug possession count to a class A misdemeanor and to dismiss the paraphernalia count, and Wilkerson agreed to plead to the reduced charge of attempted drug possession. The court sentenced Wilkerson on the same day he entered his plea. The court ordered Wilkerson to serve a one-year jail sentence, but suspended that sentence and placed Wilkerson on probation. Among other conditions of probation, the court ordered Wilkerson to "serve 111 days in jail," but gave Wilkerson credit

for the 111 days he had already served, and did not require Wilkerson to spend any additional time in jail.

¶5 At the sentencing hearing, which took place in July 2019, Wilkerson's counsel anticipated that the State would ask for reimbursement under the Pay-to-Stay Statute, noting that "because [Wilkerson] has now been convicted of a misdemeanor, he is subject to restitution requirements" under that statute. Counsel noted that the statute exempted individuals who did not have "the ability to pay," but acknowledged that Wilkerson had the ability to make reimbursement payments. Instead of asserting that the statute was inapplicable to Wilkerson on indigency grounds, counsel asked "for the Court to make a finding that [the Pay-to-Stay Statute] does not apply in a case where a defendant does not receive further time after conviction that results in incarceration at a county jail facility." The State took the opposite position, asserting that the statute authorized reimbursement even for pre-conviction incarceration, so long as the defendant was eventually convicted of the crime that was holding him in jail and sentenced to serve a period of time that included the time already served.

¶6 After hearing arguments of counsel, the court declined to immediately rule on the issue, ordering Wilkerson's sentence stayed until it could resolve the reimbursement issue. The court invited the parties to submit briefing on the question of the applicability of the Pay-to-Stay Statute, which invitation both parties accepted. After reviewing the parties' briefing, the court sided with the State, and issued a written order commanding Wilkerson to pay restitution for the 111 days he served in jail, an amount the State computed to be $1,939.65.

¶7 Wilkerson then filed a motion to vacate the restitution portion of his sentence under rule 22(e) of the Utah Rules of Criminal Procedure, asserting that the restitution order was illegal and that it violated principles of due process. However,

Wilkerson advanced only the same argument that he had advanced before, in his post-sentence brief: that he was "not subject to" the Pay-to-Stay Statute because "he was not *actually* incarcerated at the county jail following sentencing." Thus, the only asserted due process violation he identified was the court's application of the statute to him under these circumstances. The court denied Wilkerson's motion in a written order.

## ISSUES AND STANDARDS OF REVIEW

¶8     Wilkerson appeals the restitution order, and asks us to review two issues. First, he asserts that the district court incorrectly interpreted and applied the Pay-to-Stay Statute. "We review questions of statutory interpretation for correctness, affording no deference to the district court's legal conclusions." *Grimm v. DxNA LLC*, 2018 UT App 115, ¶ 14, 427 P.3d 571 (quotation simplified). Second, Wilkerson appeals the denial of his post-sentencing motion that invoked both rule 22(e) of the Utah Rules of Criminal Procedure and due process. We review the court's denial of that motion for correctness. *See Salt Lake City Corp. v. Jordan River Restoration Network*, 2012 UT 84, ¶ 105, 299 P.3d 990 ("Generally, due process issues present questions of law that we review for correctness." (quotation simplified)); *see also State v. Walton*, 2019 UT App 187, ¶ 14, 455 P.3d 1066 ("We review the denial of a rule 22(e) motion for correctness.").

## ANALYSIS

### I

¶9     Wilkerson first asserts that the Pay-to-Stay Statute, by its terms, does not apply to him, and that the district court therefore erred when it ordered him to reimburse the county for the time he spent in jail. That statute, in relevant part, reads as follows:

> In addition to any other sentence the court may impose, . . . the defendant shall pay restitution to the county for the cost of incarceration and costs of medical care provided to the defendant while in the county correctional facility before and after sentencing if . . . the defendant is convicted of criminal activity that results in incarceration in the county correctional facility.

Utah Code Ann. § 76-3-201(6)(a)(i) (LexisNexis 2017). Wilkerson interprets this statute as authorizing reimbursement only for jail time served following conviction and sentence. The State, by contrast, sees no such restriction in the statutory language, and asserts that the district court correctly ordered restitution here.

¶10    As we consider this question of statutory interpretation, we keep in mind our supreme court's instruction that "the point of statutory interpretation is to ascertain the intent of the legislature." *In re adoption of B.H.*, 2020 UT 64, ¶ 31 (quotation simplified). And the best evidence of legislative intent is the language our legislature used to express that intent. *See Hertzske v. Snyder*, 2017 UT 4, ¶ 10, 390 P.3d 307 ("The best indicator of legislative intent is the plain language of the statutes themselves."). When the statutory language is unambiguous, we do "not look beyond the same to divine legislative intent" because "we are guided by the rule that a statute should generally be construed according to its plain language." *State v. Malo*, 2020 UT 42, ¶ 22, 469 P.3d 982 (quotation simplified); *see also Scott v. Scott*, 2017 UT 66, ¶ 22, 423 P.3d 1275 ("When we can ascertain the intent of the legislature from the statutory terms alone, no other interpretive tools are needed, and our task of statutory construction is typically at an end." (quotation simplified)). But if the relevant statutory language is ambiguous, "we generally resort to other modes of statutory construction and seek guidance from legislative history and other accepted

sources." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 15, 267 P.3d 863 (quotation simplified).

¶11 A statute is considered ambiguous if "its terms remain susceptible to two or more reasonable interpretations after we have conducted a plain language analysis." *Id.; see also Sachs v. Lesser*, 2008 UT 87, ¶ 17, 207 P.3d 1215 ("A statute is ambiguous when it may reasonably be understood to have two or more plausible meanings." (quotation simplified)). A party's "suggested interpretation" of a statute is not reasonable, however, when it "contradicts the plain language of the statute." *State v. Watkins*, 2013 UT 28, ¶ 27, 309 P.3d 209, *superseded by statute on other grounds as stated in Christensen v. Juab School Dist.*, 2017 UT 47, ¶ 14, 424 P.3d 108; *cf. Saleh v. Farmers Ins. Exch.*, 2006 UT 20, ¶ 17, 133 P.3d 428 (stating, in the context of contractual interpretation, that "to merit consideration as an interpretation that creates an ambiguity, the alternative rendition must be based upon the usual and natural meaning of the language used and may not be the result of a forced and strained construction" (quotation simplified)).

¶12 Here, Wilkerson argues that the relevant statutory language is ambiguous, and can be reasonably interpreted in two different ways. Wilkerson acknowledges the State's interpretation: that the statute authorizes reimbursement for jail time spent both "before and after sentencing," as long as the jail time was the result of the same criminal activity of which the defendant was ultimately convicted. *See* Utah Code Ann. § 76-3-201(6)(a)(i). But Wilkerson advances a second interpretation, one that he asserts is also a plausible reading of the relevant language: that a defendant is subject to reimbursement "only if incarcerated *after* conviction, regardless of time spent at the county jail facility before that event."

¶13 The State's proffered interpretation is reasonable and supported by the plain language of the statute, and Wilkerson

does not argue otherwise. Indeed, as the State points out, the phrase "before and after sentencing" includes, by definition, jail time spent before sentencing, a span of time that itself must include—given that conviction always precedes sentencing—any jail time spent prior to conviction. The only limit imposed by the statutory language is that the defendant must be convicted "of criminal activity that results in incarceration" at the county jail, *see id.*, a limitation that does not necessarily have anything to do with whether the jail time occurred before or after conviction. Under this interpretation, Wilkerson was subject to a restitution order for the 111 days he spent in jail, because he was convicted of criminal activity for which he was ultimately sentenced to 111 days in jail, regardless of whether that jail time was served before or after sentencing.

¶14 Wilkerson's proffered interpretation, by contrast, is not supported by the plain meaning of the statutory language, and requires us to read crucial terms out of the statute. When reading a statute, we must "give meaning to each word used, wherever possible," because we "presume that the legislature used each word advisedly." *In re J.M.*, 2020 UT App 52, ¶ 28, 463 P.3d 66 (quotation simplified). The chief problem with Wilkerson's interpretation is that it does violence to the phrase "before and after sentencing." *See* Utah Code Ann. § 76-3-201(6)(a). The plain meaning of that phrase indicates that any incarceration served as a result of criminal activity for which the defendant is convicted is subject to restitution, regardless of whether the incarceration occurred "before or after sentencing." *See id.* Wilkerson's argument that the statute authorizes restitution only for incarceration served after conviction requires us to either ignore the plain language of "before and after sentencing," or to interpret that phrase in a way at odds with its plain language.

¶15 Wilkerson notes, however, that the statute authorizes reimbursement, even "before and after sentencing," only "if the defendant is convicted of criminal activity that results in

incarceration" at the county jail. *See id.* § 76-3-201(6)(a)(i). Wilkerson focuses on the term "incarceration," which he notes is not defined in the Pay-to-Stay Statute, and posits that the term should be construed to mean only post-sentencing or post-conviction incarceration, and should be construed to exclude pre-conviction incarceration. In aid of this argument, Wilkerson asks us to import a definition of "incarceration" from a different part of the Utah Code, invoking an interpretive tool we occasionally use when a statutory term is undefined within the section where it is found. *See, e.g.*, *O'Hearon v. Hansen*, 2017 UT App 214, ¶ 26, 409 P.3d 85 ("When a term is not defined within a particular section of the Utah Code, courts may also look to other sections of the Utah Code to see whether the same term is defined elsewhere."). Wilkerson points us to section 78B-9-401.5 of the Utah Code, which is part of our statute concerning "Postconviction Determination of Factual Innocence." That statute allows any person convicted of a crime but later found to be "factually innocent" to recover monetary compensation from the State for time spent incarcerated. *See generally* Utah Code Ann. § 78B-9-405 (LexisNexis 2017). In that context, our legislature defined "[p]eriod of incarceration" as "any sentence of imprisonment, including jail, which was served after judgment of conviction." *See id.* § 78B-9-401.5(4).

¶16    But as the State points out, it would be erroneous to deduce that our legislature, in enacting the Pay-to-Stay Statute, intended to import the definition of "incarceration" from the factual innocence statute, for two reasons. First, the Pay-to-Stay Statute, including its language regarding incarceration, was enacted in 2003. *See* County Correctional Facility Reimbursement Act, ch. 280, 2003 Utah Laws 1286. The factual innocence statute, by contrast, was first enacted in 2008, *see* Exoneration and Innocence Assistance Act, ch. 358, 2008 Utah Laws 2296, but its definition of "incarceration" was not added until 2010, *see* Post Conviction Remedies Act Amendment, ch. 153, § 2, 2010 Utah Laws 739, 740 (enacting a new section to define "[p]eriod of

incarceration" and other terms). It is unreasonable to conclude that our legislature, in enacting the Pay-to-Stay Statute in 2003, intended to incorporate a specialized definition of "incarceration" that it would not codify, even in a different context, for another seven years. Had our legislature intended the 2010 definition of "incarceration" used in the factual innocence statute to apply to the previously enacted Pay-to-Stay Statute, we are confident it would have said so more clearly.[1]

¶17 Second, and more substantively, Wilkerson's proffered interpretation of "incarceration" runs counter to the plain language of other parts of the Pay-to-Stay Statute, which allow restitution for jail time served "in the county correctional facility before and after sentencing." *See* Utah Code Ann. § 76-3-201(6)(a). We cannot import a definition of a term from another section of the Utah Code when that imported definition directly

---

1. Moreover, not only did the legislature fail to specify that the 2010 definition of incarceration found in the factual innocence statute should apply to the previously enacted Pay-to-Stay Statute, the legislature made a statutory amendment in 2019 that suggests the opposite intent. That year, the legislature added a requirement that county jails submit an annual report disclosing whether and to what extent they require pay-to-stay restitution. *See* Restitution Reporting Act, ch. 252, § 1, 2019 Utah Laws 1620, 1620–21 (codified at Utah Code Ann. § 17-22-32.2 (LexisNexis Supp. 2019)). In that statute, the legislature defined "inmate" as "an individual who is currently incarcerated or who was formerly incarcerated at a county jail, regardless of whether the individual is convicted of a crime." *See* Utah Code Ann. § 17-22-32.2(1)(b). Thus, in the pay-to-stay context, the legislature has exhibited an understanding that "incarceration" simply means time served in jail, regardless of whether that time was served before or after conviction and sentence.

contradicts express language found elsewhere in the actual statute at issue.

¶18 In this situation, where the term "incarceration" is undefined in the relevant statute and no other statutory definition applies, we simply apply the plain meaning of the term. *See Muddy Boys, Inc. v. Department of Commerce*, 2019 UT App 33, ¶ 16, 440 P.3d 741 ("Where a statutory term is undefined, we must endeavor to determine its plain and ordinary meaning."). And the plain meaning of "incarceration" is simply confinement in jail or prison, without regard to whether that time was served before or after conviction, sentencing, or any other milestone. *See Incarceration*, Black's Law Dictionary (11th ed. 2019) (defining "incarceration" as "[t]he act or process of confining someone; imprisonment"); *see also Incarceration*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/incarceration [https://perma.cc/9QH5-8S9D] (defining "incarceration" as "the act of putting or keeping someone in prison or in a place used as a prison" and "the act of keeping someone in a closed place and preventing them from leaving it"); *Incarceration*, Merriam-Webster, https://www.merriam-webster.com/dictionary/incarceration [https://perma.cc/AQ4V-KFT4] (defining "incarceration" as "confinement in a jail or prison: the act of imprisoning someone or the state of being imprisoned").

¶19 In short, we do not consider Wilkerson's proffered interpretation of the Pay-to-Stay Statute to be reasonably supported by the plain language of the statute. Given that we perceive only one reasonable interpretation of the statute—the one proffered by the State—we conclude that the Pay-to-Stay Statute is, in this context, unambiguous. It has two definite carceral prerequisites: that the defendant have been incarcerated in a county correctional facility before or after sentencing, and that the defendant eventually be convicted of the criminal

activity that "results in" his or her incarceration.[2] *See* Utah Code Ann. § 76-3-201(6). Once those conditions are satisfied, and assuming that all other conditions of the statute (including lack of indigency) are met, a court may order a defendant to repay the county for the costs of his or her incarceration, even if that incarceration was served prior to conviction or prior to sentencing. *See id.*

¶20 And in this case, these carceral prerequisites were satisfied. Wilkerson was taken to the Utah County Jail because he was arrested for and charged with drug possession. He spent 111 days in custody on that charge before finally pleading guilty to a reduced count of misdemeanor drug possession. At sentencing, the district court ordered him to serve 111 days in jail on that charge, but gave him credit for time served.[3] Thus, all

---

2. In this case, because Wilkerson was eventually sentenced to serve the entire 111 days—rather than a lesser amount—in jail, all of his jail time was unquestionably a consequence of his criminal activity; we need not here decide the more difficult causal question that may arise in a pay-to-stay case in which a defendant is sentenced to serve a shorter time in jail than he or she had already served prior to sentence. *See infra* note 3.

3. Two members of this panel served as district court judges, and we understand the judicial impulse to impose sentence, in cases like this, in the exact amount of days already served (here, 111 days), rather than in a—perhaps smaller—amount of days designed to be "proportionate to the gravity of the offense and the culpability of the offender." *See* Utah Sentencing Comm'n, *Adult Sentencing & Release Guidelines* 3 (2020), https://justice.utah.gov/Sentencing/Guidelines/Adult/2020%20 Adult%20Sentencing%20and%20Release%20Guidelines.pdf [https://perma.cc/C8ZQ-6S2N]. In many cases, it may not matter for any practical purpose whether a defendant is sentenced to

(continued…)

of the time Wilkerson spent in jail was related to criminal activity for which he was ultimately convicted, and all of that time was ultimately included in his sentence. Under these circumstances, the court's interpretation of the Pay-to-Stay Statute was correct, and it did not err in ordering restitution.

II

¶21 Wilkerson next appeals the district court's denial of his post-sentencing motion, in which he claimed that he was denied due process of law. "Generally speaking," a party must make "a timely and specific objection . . . in order to preserve an issue for appeal." *State v. Pinder*, 2005 UT 15, ¶ 45, 114 P.3d 551 (quotation simplified). To do so, the party must raise the issue with the district court "in such a way that the [district] court has an opportunity to rule on that issue." *In re adoption of Baby E.Z.*, 2011 UT 38, ¶ 25, 266 P.3d 702 (quotation simplified). Before the district court, the only "due process" claim that Wilkerson raised in his post-sentencing motion was his contention that the court

---

(…continued)

the full amount (here, 111) or some lesser amount (say, 30 or 60) of the already-served days in jail. However, where the Pay-to-Stay Statute is in play, such distinctions might matter. We do not purport to here answer the question whether, had Wilkerson been sentenced to only, say, 60 days in jail, despite the fact that he had already served 111 days, he could be ordered to pay restitution for the entire 111 days. Nor do we decide whether the Pay-to-Stay Statute would apply if Wilkerson had ultimately been convicted but was sentenced to no jail time. But until those questions are definitively answered, we encourage sentencing judges in pay-to-stay cases to avoid reflexively imposing sentence in the exact amount of days already served, and instead to consider whether that amount of days, or a different amount, would best serve the goals of sentencing and incarceration.

had erroneously interpreted the Pay-to-Stay Statute. That claim, while certainly preserved, has been addressed on its merits and rejected above in Part I, and we need not consider it further here.

¶22 On appeal, Wilkerson attempts to raise new due process concerns that were not brought to the attention of the district court. Here, Wilkerson asserts, for the first time, that the Pay-to-Stay Statute itself provides inadequate due process protections, and that the district court denied him due process in this case. Such concerns are not preserved for appellate review, because Wilkerson did not give the district court "an opportunity to rule on" them. *See id.* (quotation simplified). "We will consider an unpreserved claim only if the appellant demonstrates that one of the exceptions to our preservation doctrine has been satisfied." *State v. Morris*, 2017 UT App 112, ¶ 12 n.5, 400 P.3d 1183. In this vein, Wilkerson asks us to consider this issue under rule 22(e) of the Utah Rules of Criminal Procedure or, alternatively, to review it for plain error.

¶23 Wilkerson's rule 22(e) arguments, however, invoke a now-superseded version of the rule. Until 2017, the rule broadly provided that a "court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." Utah R. Crim. P. 22(e)(1) (2016); *see also State v. Candedo*, 2010 UT 32, ¶ 9, 232 P.3d 1008 (referring to the language of rule 22(e) as "sweeping" (quotation simplified)). And, as Wilkerson correctly points out, our supreme court interpreted that version of the rule as giving appellate courts the authority, at least in some cases, to vacate facially unconstitutional sentences at any time, even when a constitutional challenge was unpreserved. *See State v. Houston*, 2015 UT 40, ¶¶ 18–20, 353 P.3d 55 (noting that "[r]ule 22(e) operates as another limited exception to the preservation doctrine" and "allows an appellate court to vacate an illegal sentence even if the legality of the sentence was never raised in the proceedings below," and holding that the rule "encompasses

facial constitutional challenges to the sentence that do not implicate a fact-intensive analysis" (quotation simplified)).

¶24 But rule 22(e) was amended in 2017. In that amendment, the "sweeping" language allowing a court to correct any "illegal sentence" "at any time" was removed, and replaced with more limiting provisions authorizing a court to "correct a sentence" only when the "sentence imposed" met any one of six specific conditions. *See* Utah R. Crim. P. 22(e)(1) (2018). We "must apply the law in effect at the time of the occurrence regulated by that law." *State v. Clark*, 2011 UT 23, ¶ 11, 251 P.3d 829 (quotation simplified). Because Wilkerson's arrest occurred in 2018 and his sentencing took place in 2019, the version of rule 22(e) that applies here is the current version, not the pre-2017 version. And Wilkerson makes no argument that any of the situations enumerated in the current version of the rule have any application here. Thus, Wilkerson has not demonstrated an entitlement to any relief under the current version of rule 22(e).

¶25 Finally, Wilkerson has also failed to demonstrate that the district court plainly erred by not sua sponte recognizing constitutional infirmity in its application of the Pay-to-Stay Statute in this case. To establish plain error, a party "must show that (i) an error exists; (ii) the error should have been obvious to the [district] court; and (iii) the error is harmful, i.e., absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant." *State v. Almaguer*, 2020 UT App 117, ¶ 11, 472 P.3d 326 (quotation simplified). And "for an error to be obvious to the [district] court, the party . . . must show that the law governing the error was clear, or plainly settled, at the time the alleged error was made." *State v. Johnson*, 2017 UT 76, ¶ 20, 416 P.3d 443 (quotation simplified).

¶26 Wilkerson makes no attempt to analyze these standards, and argues only in passing that the Pay-to-Stay Statute is "plainly unconstitutional for violating due process." Under these

circumstances, Wilkerson has failed to carry his burden of demonstrating that the district court plainly erred by failing to intervene, especially where, as here, the applicable statute does contain certain procedural safeguards, *see* Utah Code Ann. § 76-3-201(6)(a), (c) (LexisNexis 2017), and Wilkerson appears to have been afforded quite a bit of procedural process in this case, including a sentencing hearing at which he was represented by counsel where the applicability of the Pay-to-Stay Statute was raised and discussed, as well as the specific opportunity for briefing on the applicability of the Pay-to-Stay Statute prior to the district court's written ruling. Wilkerson simply has not carried his burden of demonstrating plain error.

## CONCLUSION

¶27 The district court did not err in its interpretation and application of the Pay-to-Stay Statute in this case. And Wilkerson has failed to carry his burden of demonstrating error in the district court's denial of his post-sentencing motion.

¶28 Affirmed.

––––––––––